In re **MASTER KEY ANTITRUST LITIGATION.**

**STATE OF CALIFORNIA et al.**

v.

**EMHART CORP. et al.**

**M.D.L. No. 45 and Civ. No. H–61.**

United States District Court, D. Connecticut.

Feb. 27, 1976.

---

Lee A. Freeman, Jr., Freeman, Rothe, Freeman & Salzman, Chicago, Ill., liason counsel for plaintiffs.

Evelle J. Younger, Atty. Gen., William S. Abbey, Deputy Atty. Gen. of California, Los Angeles, Cal., for plaintiff State of California.

John W. Barnett, Wiggin & Dana, New Haven, Conn., Walter A. Bates, Arter & Hadden, Cleveland, Ohio, co-liason counsel for defendants Eaton Corp., Ilco Corp. and Sargent & Co.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BLUMENFELD, District Judge.

On April 25, 1973, the State of California filed this action in the United States District Court for the Central District of California, alleging that the defendants had conspired to restrain trade, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1970). Jurisdiction exists pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15 (1970). The action was eventually transferred to this court pursuant to 28 U.S.C. § 1407, to be consolidated with the other actions pending here. *In re Master Key Antitrust Litigation,* M.D.L. Dkt. No. 45.

Three of the defendants, Eaton Corporation, Ilco Corporation, and Sargent & Company, have filed a motion for summary judgment in this individual action. They argue that the claims of the State of California are barred by the Clayton's Act's four-year statute of limitations. 15 U.S.C. § 15b (1970).[1]

### I. *Statute of Limitations*

The defendants are manufacturers of "master key systems."[2] The State of California contends that they conspired to restrain competition, enabling themselves to charge inflated prices for the systems. The complaint alleges a continuing conspiracy, the effects of which California suffered until the filing of its complaint.

The defendants, on the other hand, deny the existence of a conspiracy, and claim that even if there was at one time such a conspiracy, it ended more than four years before California can be deemed to have filed its complaint. There are thus two parts to the issue presented by this summary judgment motion. First, from what date should the four-year statute of limitations be measured; second, have the defendants met the requirements of Rule 56(b), Fed. R.Civ.P.?

The proper application of the Clayton Act statute of limitations was set out by the Supreme Court in *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77, 92 (1971):

> "The basic rule is that damages are recoverable under the federal antitrust acts only if suit therefor is 'commenced within four years after the cause of action accrued,' 15 U.S.C.

---

[1.] 15 U.S.C. § 15b reads:

"Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section and sections 15a and 16 of this title shall be revived by said sections."

[2.] "Master key system" refers to a lock and key system designed specifically for a particular building or complex of buildings in accordance with a plan for limiting access to specified areas within such building. "Master keying" refers to an arrangement of cylinders having individual key changes which permit them all to be operated by a single key, called a master key.

§ 15b, plus any additional number of years during which the statute of limitations was tolled. Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business. [Citations omitted.] This much is plain from the treble-damage statute itself. 15 U.S.C. § 15. In the context of a continuing conspiracy to violate the antitrust laws, such as the conspiracy in the instant case, this has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act. [Citations omitted.]"

At the outset, therefore, California can maintain this action for any injury it has suffered due to any overt act of the defendants which occurred on or after April 25, 1969, four years before the suit was filed. It may, however, be entitled to the benefit of one or more tolling periods which would extend the period for which it can recover.

■ On February 3, 1970, the City of Philadelphia filed an action against these same defendants, alleging identical antitrust violations. *City of Philadelphia v. Emhart Corp.*, Civil No. 70–352 (E.D.Pa.).[3] In its action Philadelphia purported to represent a class described as:

"all state, county, and local governmental authorities and agencies in the United States who have purchased locks with Master Key Systems from one or more of the defendants."

This class was tentatively certified by Judge Wood, 50 F.R.D. 232 (E.D.Pa. 1970), and his determination was reaffirmed by this court.[4] Since the State of California was clearly a member of that class, the statute of limitations was tolled when that complaint was filed. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). This takes the four-year period back to February 2, 1966.

Furthermore, California claims the benefits of Section 5(b) of the Clayton Act, 15 U.S.C. § 16(b) (1970),[5] which provides that at the time the federal government files an antitrust suit the running of the statute of limitations is suspended for the benefit of all private plaintiffs who bring suit within one year of the termination of the government's action.

■ On July 11, 1969, the United States filed suit against each of these three defendants individually, alleging in each case a vertical conspiracy between the manufacturer and its distributors to restrain competition in the marketing of master key systems. Two of the three moving defendants stipulated to consent judgments.[6] The third defendant, Eaton

---

**3.** That action was also transferred to this court pursuant to 28 U.S.C. § 1407, and is now renumbered. *City of Philadelphia v. Emhart Corp.*, Civil No. 14,233 (D.Conn.).

**4.** *In re Master Key Antitrust Litigation*, 406 F.Supp. 547 (D.Conn.1975), *appeal dismissed*, 528 F.2d 5 (2d Cir. 1975).

**5.** 15 U.S.C. § 16(b) reads:

"Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on

any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued."

**6.** *United States v. Sargent & Co.*, Civil No. 13,-263 (D.Conn. April 8, 1970); *United States v. Ilco Corp.*, Civil No. 13,261 (D.Conn. Oct. 5, 1969).

Corporation, proceeded to trial, after which a jury returned a verdict in favor of the United States. Judgment was entered on March 10, 1972.[7] Thus, the action continued to be pending for the purposes of Section 5(b) only until April 10, 1972, the date when the time for appeal from the judgment expired.[8] *Russ Togs, Inc. v. Grinnell Corp.,* 426 F.2d 850 (2d Cir.), *cert. denied,* 400 U.S. 878, 91 S.Ct. 119, 27 L.Ed.2d 115 (1970).

Since California filed its action one year and fifteen days after that date it would appear that it cannot take advantage of the suspension provision. However, the logic of *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), seems applicable in this situation as well. Since the *City of Philadelphia* class action was filed before the final judgment was entered in either the *Eaton Corp.* or *Sargent & Co.* cases,[9] it was within the time limitations of Section 5(b); and since California was a member of that class, it cannot be precluded from the benefits of the suspension if it can meet the other requirement of the statute.[10]

It is not enough that the private action be filed within one year of the termination of the government's suit. The private action must also be "based in whole or in part on any matter complained of" in the government's action. In the present case the defendants claim that the private actions are not in fact based on the government's earlier suits.

The key phrase was expansively interpreted by the Supreme Court in *Leh v. General Petroleum Corp.,* 382 U.S. 54, 59, 86 S.Ct. 203, 207, 15 L.Ed.2d 134, 138 (1965):

"The private plaintiff is not required to allege that the same means were used to achieve the same objectives of the same conspiracies by the same defendants. Rather, effect must be given to the broad terms of the statute itself—'based *in whole or in part* on *any matter* complained of' (emphasis added [by Supreme Court])—read in light of Congress' 'belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws.' [Citation omitted.] Doubtlessly, care must be exercised to insure that reliance upon the government proceeding is not mere sham and that the matters complained of in the government suit bear a real relation to the private plaintiff's claim for relief. But the courts must not allow a legitimate concern that invocation of § 5(b) be made in good faith to lead them into a niggardly construction of the statutory language here in question."

■ In its earlier actions, the government alleged vertical conspiracies by each of the defendants. These private actions allege a horizontal conspiracy among the defendants, which each defendant enforced through its vertical conspiracy with its own distributors. The defendants' claim, that these broader allegations, which include and add to the allegations in the government's suits, are outside the scope of Section 5(b), was refuted in *Minnesota Mining & Manufacturing Co. v. New Jersey Wood Finishing Co.,* 381 U.S. 311, 323–24, 85 S.Ct. 1473, 1480, 14 L.Ed.2d 405, 414 (1965), where the Court stated:

"That clause [§ 5(b)] provides for tolling as long as the private claim is based 'in part on any matter com-

---

**7.** *United States v. Eaton, Yale & Towne, Inc.,* Civil No. 13,264 (D.Conn.).

**8.** At the time the case was decided, appeal lay only to the Supreme Court. 15 U.S.C. § 29 (1970), *as amended,* (Supp. IV, 1974). Under 28 U.S.C. § 2101(b), appeal would have to have been taken within 30 days.

**9.** *See* notes 6–7 *supra.*

**10.** The statute is suspended as to Ilco as well, since the suspension is effective against all participants in the conspiracy, whether or not they are named in the government's complaint. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 335–36, 91 S.Ct. 795, 804–05, 28 L.Ed.2d 77, 90 (1971); *Maricopa County v. American Pipe & Construction Co.,* 303 F.Supp. 77, 87 (D.Ariz.1969).

plained of" in the government proceedings. The fact that New Jersey Wood claims that the same conduct has a greater anti-competitive effect does not make the conduct challenged any less a matter complained of in the government action. It merely requires it to meet a greater burden of proof as to the effect of the conspiracy before a Sherman Act claim can be sustained."

And *see In re Antibiotic Antitrust Actions,* 333 F.Supp. 317, 321 (S.D.N.Y. 1971).

Therefore this court concludes that the statute of limitations in this case bars claims by the State of California only insofar as they accrued prior to July 11, 1965, four years prior to the date upon which the United States first filed suit against these three defendants.

## II. *The Propriety of Summary Judgment*

The basis for the defendants' claim that California's action is barred by the statute of limitations is that, as the result of an injunction entered by a California state court on August 11, 1965, against several of the defendants' distributors, any conspiracy which might have existed in California prior to that date was effectively terminated.[11]

The State of California has responded to the defendants' contentions with documents which purport to demonstrate the occurrence of overt acts in California after the entry of the injunction, and with a general argument that the demonstration of the existence of a conspiracy nationwide in scope is sufficient to raise the factual issue of its continued existence in California.

In a recent line of cases, beginning with *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975), the Court of Appeals for this circuit has defined the standards to be ap-

plied by a district court in passing on a motion for summary judgment. The court has emphasized that:

". . . [T]he 'fundamental maxim' remains that on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried. Moreover, when the court considers a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. This rule is clearly appropriate, given the nature of summary judgment. This procedural weapon is a drastic device since its prophylactic function, when exercised, cuts off a party's right to present its case to the jury." (Citations omitted.)

At 1319–20. And *see United States v. Bosurgi,* 530 F.2d 1105 (2d Cir. 1976); *Home Insurance Co. v. Aetna Casualty & Surety Co.,* 528 F.2d 1388 (2d Cir. 1976); *Jaroslawicz v. Seedman,* 528 F.2d 727 (2d Cir. 1975); *National Life Insurance Co. v. Solomon,* 529 F.2d 59 (2d Cir. 1975); *Judge v. City of Buffalo,* 524 F.2d 1321 (2d Cir. 1975).

 This doctrine of judicial restraint is especially appropriate in complex antitrust litigation. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962).

 In this case it is clear that the defendants have failed to meet their burden. They ask this court to infer, from an injunction entered as part of a consent decree in a suit in which they were not even parties, that the alleged nationwide conspiracy was terminated in California more than four years before the statute of limitations ran. This is the type of inference which is more

11. My determination that the statute of limitations was suspended on July 11, 1969, brings the four-year period back before the entry of

the injunction and is, therefore, one ground for denial of this motion for summary judgment.

properly drawn *against* the party moving for summary judgment.

In its response, California has submitted several documents which support its contention that a nationwide conspiracy existed after August 1965, and that some overt acts took place in that state. Among these documents are policy statements by some of the defendants' supervisory personnel and "Customer Removal Forms" which purport to show that some California distributors were terminated as late as June 1966 for bidding into competitors' master key systems. The defendants question the importance of these documents, arguing that they are either ambiguous or of little evidentiary weight. But, as the Court of Appeals has stressed, the weighing of the evidence is a jury function, and ambiguities must be resolved against the moving party on a motion for summary judgment.

For these reasons, I conclude that the defendants have failed to demonstrate the absence of genuine issues of material fact, and that summary judgment is therefore precluded. The motion is denied.

SO ORDERED.