**UNITED STATES of America, Plaintiff,**

**v.**

**MERCEDES-BENZ OF NORTH AMERICA, INC., Defendant.**

**No. C-79-2144 MHP.**

United States District Court, N. D. California.

Aug. 9, 1982.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

Anthony E. Desmond, Antitrust Div., U. S. Dept. of Justice, San Francisco, Cal., for plaintiffs.

Malcolm T. Dungan, George A. Cumming, Jr., Brobeck, Phleger & Harrison, James E. Ratcliff, Thatcher, Jones, Casey & Ratcliff, San Francisco, Cal., for defendants.

## MEMORANDUM DECISION

PATEL, District Judge.

On March 15, 1982 the parties to this case lodged with the court a stipulated dismissal without prejudice. On March 16 the court ordered the parties to brief the issue of whether the requirements of the Antitrust

Procedures and Penalties Act (APPA), 15 U.S.C. § 16(b)–(h), were invoked by the filing of a stipulation of dismissal. Memoranda were submitted by the parties and several amici. Oral argument was heard on May 27, 1982. The court determined that under its inherent powers it could inquire into circumstances giving rise to the dismissal to determine whether the APPA applied or there was any other reason why the dismissal should not be filed.

■■■ It is fundamental that federal courts have inherent power to "prevent abuse, oppression, and injustice . . . as extensive and efficient as may be required by the necessity for their exercise and [it] may be invoked by strangers to the litigation" or sua sponte. *Gumbel v. Pitkin*, 124 U.S. 131, 146, 8 S.Ct. 379, 384, 31 L.Ed. 374 (1888). While the filing of a stipulation of dismissal is effective automatically and does not require judicial approval, the court, exercising its inherent powers, may look behind it to determine whether there is collusion or other improper conduct giving rise to the dismissal. *See Thomsen v. Terrace Navigation Corp.*, 490 F.2d 88 (2d Cir. 1974) (court has inherent power to set aside voluntary discontinuance where attorney settled and dismissed action without agreement of his client).

The court's power is appropriately exercised where the action is one imbued with the public interest. Government-initiated antitrust suits are of a public nature.

■■ In its order of March 16, this court noted that in passing the APPA "Congress was concerned with protection of the public interest in settlement of antitrust actions in general." The court also found that "[t]he effect and public interest is as great whether resolved by stipulation or dismissal."

The court remains of that opinion. The evils of secrecy[1] and ineffective enforcement of the antitrust laws[2] which the bill was intended to address can arise from any settlement of a case, regardless of its form. Therefore, it is appropriate and within this court's power to look behind the stipulated dismissal to determine whether there is any settlement, agreement, or understanding between the parties. The parties were ordered to certify to this court whether there was any agreement or understanding underlying the dismissal. The parties have filed certificates and satisfied this court that there are no such agreements. That leaves the question of whether the APPA applies to dismissals. The court concludes that it does not.

It is apparent from the legislative history[3] of the APPA that it was intended to apply only to consent decrees. First, abuse of consent decrees was the perceived problem. References to the fact that 80% of all antitrust cases initiated by the government were disposed of by consent decree are ubiquitous. *See, e.g.,* 119 Cong.Rec. 3451 (1973) (introductory remarks of Sen. Tunney); S.Rep.No.298, 93rd Cong., 1st Sess. 5 (1973). The spectre of an assistant attorney general attempting to unilaterally change the structure of antitrust law by dismissing major cases brought by previous administrations had not yet presented itself.

Second, dismissals were discussed in the subcommittee hearings. The witnesses indicated that dismissals were considered an appropriate option for the government if a proposed consent decree was rejected. The reasoning was that if a case was dismissed without prejudice, it could be reinstituted and vigorously pursued by a later administration. That was preferable to an inadequate consent decree that could hinder sub-

---

1. *See Consent Decree Bills: Hearings on H.R. 9203, H.R. 9947, and S. 782 before the Subcommittee on Monopolies and Commercial Law of the Committee on the Judiciary, House of Representatives,* 93rd Cong., 1st Sess. 38 (1973) (statement of Chairman Rodino).

2. 119 Cong.Rec. 3451 (1973) (introductory remarks of Sen. Tunney).

3. It is appropriate to consider the legislative history in construing the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)–(h). This is not a statute that can be interpreted on its "plain meaning." *Compare Maine v. Thiboutot,* 448 U.S. 1, 6 n.4, 100 S.Ct. 2502, 2505 n.4, 65 L.Ed.2d 555 (1980). The language of the statute refers to "consent judgments," an unusual variation on the more common term "consent decree."

sequent attempts to regulate the defendant's practices. *See Consent Decree Bills: Hearings on H.R. 9203, H.R. 9947 and S. 782 before the Subcommittee on Monopolies and Commercial Law of the Committee on the Judiciary, House of Representatives,* 93rd Cong., 1st Sess. 43 (1973) (exchange between Rep. Hutchinson and Sen. Tunney); *Hearings on S. 782 The Antitrust Procedures and Penalties Act and S. 1088 The Antitrust Settlement Act of 1973 before the Subcommittee on Antitrust and Monopoly of the Committee on the Judiciary, U. S. Senate,* 93rd Cong., 1st Sess. 76–77 (1973) (statement of James S. Campbell).

Finally, to apply the APPA to dismissals would be to disregard the apparent understanding of Congress as to the then-existing judicial practice regarding consent decrees and the effect of the changes being made. Prior to the passage of the APPA, entry of consent decrees was already considered to be a judicial act requiring the judge's approval. *See* S.Rep.No.298, 93rd Cong., 1st Sess. 5 (1973). The APPA was not intended to change the status of consent decrees, but rather to ensure that judges took seriously an obligation they already had. *See, e.g.,* H.R.Rep.No.1463, 93rd Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 6535, 6538. In contrast, stipulated dismissals are ordinarily entered without the need for court approval. Rule 41(a)(1), Federal Rules of Civil Procedure. Congress' understanding that no major changes were being made cannot be reconciled with inclusion of dismissals within the coverage of the APPA.

This court is sympathetic with some of the arguments of the amici. It seems illogical that Congress has required protective procedures for consent decrees, where the government presumably has obtained some of the relief originally sought, but no procedural safeguards are required for dismissals, where no relief at all was obtained. Both practices can be subject to similar abuses. However, it is up to Congress to correct the abuses. The government correctly points out that application of the APPA to dismissals could raise serious questions of separation of powers.[4] This court declines to wade through such a constitutional morass without a clearer indication that the trip is necessary. The court therefore concludes that the APPA is inapplicable to the dismissal in this case.

---

4. The government also points out that application of the APPA to require the government to prosecute a case it does not wish to pursue may cause a lack of a case or controversy to sustain the court's jurisdiction. The court need not reach this issue, and does not decide it.