**GREGG COMMUNICATIONS SYSTEMS, INC., et al., Plaintiffs,**

**v.**

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY et al., Defendants.**

**No. 82 C 6291.**

United States District Court, N.D. Illinois, E.D.

Aug. 8, 1983.

---

John E. Noel, Stephanie W. Kanwit, Mark M. Heatwole, Leo J. Asaro, Margaret F. Woulfe, Chadwell & Kayser, Ltd., Chicago, Ill., for plaintiffs.

Gerald A. Ambrose, Theodore N. Miller, Deborah H. Morris, Sidley & Austin, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

On October 14, 1982, five plaintiffs [1] filed their complaint in this antitrust action, alleging that defendants had violated Sections 1 and 2 of the Sherman Act. (15 U.S.C. §§ 1, 2). In their complaint, plaintiffs generally alleged that commencing sometime prior to 1968, and continuing to the present, defendants combined and conspired to restrain and to monopolize trade and commerce in the manufacture, distribution, sale, rental, and lease of automatic answering devices, (most notably the Code-a-phone automatic answering device manufactured by Ford Industries), as well as other telephone terminal equipment. Telephone terminal equipment was broadly defined in the complaint to include "all mechanical or electrical equipment located on subscriber's premises at terminal points of the Bell System's telecommunications network..." (Compl. ¶ 4(b)). Plaintiffs were dealers in the Code-a-phone automatic answering device as well as other telephone terminal equipment.

---

1. Gregg Communications Systems, Inc.; Buscom Systems, Inc.; Dictronic Systems, Inc.; Telecom Enterprises, Inc.; and Telephone Systems Corporation (d/b/a Donovan Hershey Corp.).

On April 19, 1983, six months after filing their original complaint, plaintiffs sought to file their first amended complaint. The amended complaint added five plaintiffs[2] and two additional counts. The two additional counts alleged that defendants combined and conspired to restrain and to monopolize trade and commerce in the manufacture, distribution, sale, rental, and lease of telephone terminal equipment, including telephone accessory devices, notably the Soft-Touch device manufactured by Buscom Systems, Inc., a company which was also one of the original plaintiff-dealers of the Code-a-phone device. All the new plaintiffs were dealers of the Code-a-phone device, just as all the original plaintiffs were dealers of the Soft-Touch, except Buscom Industries, Inc., the manufacturer. In addition to the Soft-Touch device, three additional devices were specifically mentioned in the amended complaint: call diverters, call sequencers, and automatic dialers.

Defendants have opposed plaintiffs' motion to amend their original complaint on the grounds that: (1) it sets forth claims which are barred by the applicable statute of limitations; (2) it seriously prejudices defendants; and (3) it broadens the scope of the original complaint, thereby violating the terms and purpose of Rule 15 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court rejects each of these assertions and grants plaintiffs' motion for leave to amend.

## I. STATUTE OF LIMITATIONS

The statute of limitations applicable to federal antitrust actions provides that an action is barred unless commenced within four years after the claim accrued.[3] Plaintiffs claim that, although at least four years have passed since the actions complained of in the amended complaint, the latter is not time-barred because the statute of limitations was tolled prior to August 24, 1983.

Plaintiffs base their argument on the fact that before that date, there was pending in the District Court for the District of Columbia, a government action based on transactions related to those alleged in the instant suit. The present suit was tolled during the pendency of the government suit, plaintiffs claim, because of 15 U.S.C. § 16(i) (1976). That statute provides that:

> Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws . . . the running of the statute of limitations in respect of every private . . . right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof, and for one year thereafter. . . .

Defendants argue that plaintiffs cannot avail themselves of this tolling provision for two reasons. First, they claim, the "pendency" of the government action ceased January 8, 1982. Because the one-year grace period ended on January 8, 1983—and because plaintiffs did not file their amended complaint until April 15, 1983—plaintiffs' amended complaint is time barred. Second, they assert that plaintiffs' proposed new allegations, especially with respect to Soft-Touch, are not based "in whole or in part on any matter complained of" in the prior government proceeding. In response, plaintiffs both disagree with defendants' selection of the relevant date and contend that the definition of telecommunications equipment used in the government case was broad enough to include allegations in plaintiffs' amended complaint. Therefore, they claim, the allegations of the amended complaint are "matter[s] complained of" in the prior government proceeding, and should be allowed to go forward.

For the reasons stated below, the Court agrees with plaintiffs and holds that their

---

**2.** Apollo Communication Systems, Inc.; Comtronics, Inc.; Communication Resources, Inc.; Hoosier Photo Supplies, Inc. (d/b/a Tele-Tron Co.); and Mid-Atlantic Industries, Inc.

**3.** "Any action to enforce any cause of action under section 4, 4A, or 4C [15 U.S.C. § 15, 15a, 15c] shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b (1976).

amended complaint is not barred by the statute of limitations.

### A. *Pendency of Government Suit*

As has already been stated, defendants argue that the government proceeding ceased pending on January 8, 1982. On that date, the parties attempted to file with the district judge (Judge Greene) a stipulation of voluntary dismissal pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure.[4] Defendants contend that the filing of this stipulation operated automatically to conclude the case. Plaintiffs counter by pointing to the language of Rule 41(a), which begins: "Subject to the provisions ... of any statute of the United States, an action may be dismissed..." 28 U.S.C. (1976). Plaintiffs contend that Judge Greene, following the mandate of the rule, was required to consider the Tunney Act[5] a "statute of the United States" prior to acting finally on the stipulation. Because of this interim period, plaintiffs argue that the judge merely "lodged" rather than "filed" the Rule 41(a) dismissal. Judge Greene's actions support plaintiffs' analysis. On August 11, 1982, the judge rendered an opinion in which he recounted the procedural history of the case and discussed the applicability of the Tunney Act to the stipulation of dismissal now raised by the defendants.[6] In conclusion, he stated:

> In any event, the parties have now stated in various ways and before various forums (including before this Court) that, irrespective of their opinion of the technical applicability of the Tunney Act, they are willing to have the Tunney Act procedures applied by this Court. In view of those representations, it became unnecessary for the Court to pass specifically upon the technical applicability of the Act. Instead, the Court on January 21,

1982, entered an order which, pursuant to the parties' consent and the Court's general equitable powers, applied the substantive Tunney Act procedures to the instant settlement.

*United States v. American Telephone and Telegraph Co.,* 552 F.Supp. 131, 145 (D.D.C. 1982).

■ It is, of course, indisputable that the Tunney Act does not apply to a stipulation of dismissal. *In re International Business Machines Corp.,* 687 F.2d 591, 603 (2nd Cir. 1982); *United States v. Mercedes-Benz of North America,* 547 F.Supp. 399 (N.D.Cal. 1982). Nevertheless, as the Court in *Mercedes-Benz* stated:

> [T]he Court, exercising its inherent powers, may look behind [a stipulation of dismissal] to determine whether there is collusion or other improper conduct giving rise to the dismissal.... The Court's power is appropriately exercised where the action is one imbued with the public interest. Government-initiated antitrust suits are of a public nature.

*Mercedes-Benz,* 547 F.Supp. at 400.

■ Judge Greene, in exercising the Court's inherent powers, did choose to look behind the stipulation of dismissal. The result was that he did not deem the government's case properly dismissed until August 24, 1982.[7] It is this Court's belief that because of Judge Greene's fully appropriate exercise of his judicial role, the request for entry of a Rule 41(a) dismissal did not operate automatically to conclude the proceeding. Because Judge Greene in fact did not dismiss the government action until August 24, 1982, the statute of limitations remained tolled until August 24, 1983 ("one year thereafter"). Therefore, plaintiffs' amended complaint is not time barred by 15 U.S.C. 15b (1976) (n. 3, *supra*).

---

4. The rule provides in relevant part, that: "... an action may be dismissed by the plaintiff without order of court ... by filing a stipulation of dismissal signed by all parties who have appeared in the action...."

5. The Tunney Act (Antitrust Procedures and Penalties Act (APPA), 15 U.S.C. § 16(b)-(h)) requires public disclosure and judicial scrutiny

of the terms and potential impacts of "consent decrees."

6. *United States v. American Telephone and Telegraph Co.,* 552 F.Supp. 131 (D.D.C.1982).

7. *United States v. American Telephone and Telegraph Co.,* No. 74–1698 (D.D.C. filed August 24, 1982).

## B. Similarity Between the Government Action and This Action

■ In addition to the above, defendants argue that certain of plaintiffs' proposed new allegations—notably those concerning the Soft-Touch—were not based in any way, even indirectly, on "any matter complained of" in the government case and thus are not covered by the tolling provision. Plaintiffs' response is that the broad submarket definition [8] for telecommunications equipment stipulated to in the government case, and the comments [9] of Judge Greene concerning the scope of the anticompetitive conduct in that case leave no doubt that the government case was pleaded and *prima facie* proved in broad enough fashion to include the types of telephone terminal equipment included in their amended complaint. This Court agrees.

The cases in which the applicability of the antitrust tolling provision (§ 16(i)) has been considered, establish that the determination of whether a private action is based on matters "complained of" in a prior government action generally "must be limited to a comparison of the two complaints on their face." *Leh v. General Petroleum Corp.,* 382 U.S. 54, 65, 86 S.Ct. 203, 210, 15 L.Ed.2d 134 (1965), *quoted in, Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 331–32, 98 S.Ct. 2370, 2376, 57 L.Ed.2d 239 (1978). However, the two complaints need not have complete identity. In construing this aspect of the tolling provision, the Supreme Court stated:

> [E]ffect must be given to the broad terms of the statute itself—"based *in whole or in part* on *any* matter complained of" (emphasis added)—read in light of Congress' "belief that private antitrust litiga-

tion is one of the surest weapons for effective enforcement of the antitrust laws." [*Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.,* 381 U.S. 311, 318, 85 S.Ct. 1473, 1477, 14 L.Ed.2d 405 (1965)] Doubtlessly, care must be exercised to insure that reliance upon the government proceeding is not a mere sham and that the matters complained of in the government suit bear a real relation to the private plaintiffs' claim for relief. But the courts must not allow a legitimate concern that invocation of § 5(b) [15 U.S.C. § 16(i)] be made in good faith lead them into a niggardly construction of the statutory language here in question.

*Leh,* 382 U.S. at 59, 86 S.Ct. at 207.

In line with the broad language of the tolling provision, the Supreme Court in *Minnesota Mining* rejected the view that § 16(a) (which permits the use of government judgments as prima facie evidence in treble damage actions) and § 16(i) are wholly interdependent and coextensive, thus giving § 16(i) a much broader interpretation. Elaborating on this conclusion in *Leh,* the Court held that § 16(i) required only that the government action and private action bear a substantial similarity to each other. *Leh,* 382 U.S. at 63, 86 S.Ct. at 209. The private litigant in *Leh* thus was entitled to the benefit of tolling, even though the conspiracy alleged covered a different time, named additional parties, and excluded some parties named in the prior government suit. *Id.* at 62, 86 S.Ct. at 208.

The lower courts likewise have liberally construed Section 16(i). *E.g. Twentieth Century Fox v. Goldwyn,* 328 F.2d 190 (9th

---

8. "[T]he electronic and electromechanical equipment designed and marketed for use in the facilities network used to provide telecommunications service, including the variety of devices and circuitry that combine to originate, transmit, switch and terminate messages in that network." *United States v. American Telephone and Telegraph Co.,* 524 F.Supp. 1336, 1346, n. 19 (D.D.C.1981).

9. "While it has been represented that defendants manufacture over 200,000 different prod-

ucts (many of which do not have a high cross-elasticity of demand), and while it is true that the government offered proof specifically with regard to only a small fraction of that number, it is also true that much of the anticompetitive conduct described by the government's witnesses transcends individual products and broadly applies to the whole equipment spectrum." *United States v. American Telephone and Telegraph,* 524 F.Supp. at 1376.

Cir.), *cert. denied,* 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1964) (section 16(i) tolls statute of limitations even though all matters complained of in private suit do not have counterparts in government suit); *In Re Master Key Antitrust Litigation,* 70 F.R.D. 29 (D.Conn.1976) (statute tolled despite fact that plaintiffs claimed greater anticompetitive effect of same conduct); *Mt. Hood Stages, Inc. v. Greyhound Corp.,* 616 F.2d 394 (9th Cir.) aff'g 1979–1 Trade Cas. ¶ 62,446 (D.Ore.1979), *cert. denied,* 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980) (tolling not precluded merely because the two proceedings did not involve precisely the same cause of action); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 333 F.Supp. 317 (S.D.N.Y.1971) (tolling appropriate when a private action incorporates the entire government case, even though it alleges broader violations flowing from the same conspiracy); *Lippa's, Inc. v. Lenox, Inc.,* 305 F.Supp. 182 (D.Vt.1969) (tolling found despite absence of total identity of issues between government proceedings and private antitrust action.)

Based on the above authorities, the Court is compelled to find devoid of merit defendants' remonstrations about the additional allegations included in plaintiffs' amended complaint. It is to be noted that this conclusion in no way abrogates the policy of repose implicit in statutes of limitation. That policy frequently is outweighed where the interests of justice require vindication of plaintiffs' rights. *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 428–29, 85 S.Ct. 1050, 1054–55, 13 L.Ed.2d 941 (1965). This is especially true, as the Supreme Court has noted, in light of Congress' "belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws." *Minnesota Mining,* 381 U.S. at 318, 85 S.Ct. at 1477. Nothing in the government's prior proceeding suggested a limited scope as to the types of equipment being subjected to defendants' conspiratorial restraint of trade and monopolization. Indeed, as plaintiffs assert, the definition of telephone terminal equipment in the government's case, con-

sidered along with Judge Greene's comments and the precedent, leaves no doubt that the government suit was broad enough to include Soft-Touch.

For the foregoing reasons, the Court holds that the plaintiffs' amended complaint is "based in whole or in part on any matter complained of" in the prior government proceeding. This conclusion and the Court's finding that the government suit ceased pending August 24, 1982, require a holding that plaintiffs' amended complaint is not barred by the statute of limitations.

## II. UNDUE PREJUDICE

As an alternative to their statute of limitations argument, defendants claim that plaintiffs' motion to amend should be denied because it would necessitate extensive new discovery and thus cause undue prejudice to defendants. The Court disagrees.

Rule 15(a) of the Federal Rules of Civil Procedure provides that once a defendant has answered, "a party may amend his pleading only by leave of the court or by written consent of the adverse party, and leave shall be freely given when justice so requires." *See also Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962); *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1334 (7th Cir.) *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 469 (1977). This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations. *Staren v. American Nat. Bank & Trust Co. of Chicago,* 529 F.2d 1257 (7th Cir.1976). *Farr v. United Airlines, Inc.,* 84 F.R.D. 618 (N.D.Ill. 1979). Such countervailing considerations were enunciated by the Supreme Court in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court....

*Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Mertens v. Hummel,* 587 F.2d 862, 865 (7th Cir.1978).

 The above-quoted language suggests, and the precedent is nearly unanimous in holding, that denial of a motion to amend may not be based solely on the fact that it is offered late in the case. Rather, some prejudice must be shown. 3 *Moore's Federal Practice,* ¶ 15.08; *A. Cherney Disposal Co.· v. Chicago and Suburban Refuse Disposal Corp.,* 68 F.R.D. 383, 385 (1975). Furthermore, the central inquiry in each case is whether the prejudice is undue. *United States v. Hougham,* 364 U.S. 310, 316, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1960). *Hess v. Gray,* 85 F.R.D. 15, 20 (N.D.Ill. 1979); *Alberto-Culver Co. v. The Gillette Co.,* 408 F.Supp. 1160, 1161 (N.D.Ill.1976). Where substantial prejudice is shown, the amendment will be denied. *A. Cherney Disposal Co., supra* at 385. In the latter case, the court stated:

> Prejudice is generally found in cases characterized by *some or all* of the following circumstances: The motion comes on the eve of trial after many months or years of pretrial activity . . . the amendment would cause undue delay in the final disposition of the case . . . the amendment brings in entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or change in the allegations of the complaint . . . witnesses have become unavailable for examination and the memories of others may have dimmed· . . . and, the amendment would require expensive and time-consuming new discovery...
> [Citations omitted] [emphasis added]

*Id.* at 385. While, as the above indicates, more than one of the listed elements is required to make out a case of undue prejudice, it bears noting that almost every amendment of a complaint "results in some degree of prejudice to a defendant, in that new discovery generally will be required and the date of trial will be delayed." *Conroy Datsun, Ltd. v. Nissan Motor Corp. in U.S.A.,* 506 F.Supp. 1051, 1054 (N.D.Ill. 1980). The possibility of increased exposure to liability is likewise an unavoidable result when amendments are granted. *Adair v. Hunt Int'l. Resources Corp.,* 526 F.Supp. 736, 739 (N.D.Ill.1981). In each case, the Court must determine if the prejudice to the defendant outweighs the policy underlying Rule 15 that a case be tried on the merits.

 In this case, the Court does not find undue prejudice. This is plaintiffs' first amended complaint. It comes only six months after the original complaint was filed. Based on the liberal policy of allowing amendments any time during the litigation, it would be unreasonable to restrict a party's ability to amend at a particular stage of the action in as much as the need to amend may not appear until after some discovery is completed. In this respect, there is no indication that plaintiffs have been dilatory in amending their pleadings once the need to do so became apparent.

Furthermore, new and separate claims are not added by the amendments contained in the new complaint. Nor is this a case where new theories are submitted which would require some showing by plaintiffs of lack of knowledge, mistake, or inadvertence, or some change in conditions over which they had no knowledge or control. Rather, as plaintiffs state, the new devices included in the amended complaint—Soft-Touch, call diverters, call sequencers, and automatic dialers—are telephone terminal equipment contemplated by the language of the original complaint. (See p. 1, *supra.*)

Additional support for amendment is provided by noting that the facts underlying defendants' continuing anticompetitive policies toward customer-provided telephone terminal equipment are essentially the same. Indeed, the facts which formed the basis of the original complaint are virtually identical to those which give rise to the new

counts in the amended complaint. Defendants suggest that the Court's allowance of the amendment would result in a waste of judicial economy. It is the Court's belief, however, that disallowance would result in even greater waste, by forcing plaintiffs to refile their amended claims in a new lawsuit.

■ Finally, the addition of new plaintiffs who are similarly situated to the original plaintiffs does not create any problems, except the potential for increased liability. As has already been noted, this potential does not alone establish a rationale for denying amendment. There is no allegation that witnesses have become unavailable or that memories have faded. And, the fact that new discovery will be required is an unavoidable result if the policy of Rule 15 is to be effectuated. It is appropriate at this point to note that discovery in this case has not reached such an advanced stage that amendment would unduly burden defendants.

All of the foregoing points to a single conclusion. Although granting plaintiffs' motion for leave to amend no doubt will inconvenience the defendants, this inconvenience simply does not rise to the level of undue prejudice contemplated by the case law. Therefore, defendants' second objection to plaintiffs' motion must be rejected.

### III. SCOPE OF AMENDED COMPLAINT

As a final argument in opposition to plaintiffs' motion to amend, defendants contend that the amended complaint broadens the scope of the original complaint, thereby violating the terms and purpose of Rule 15 of the Federal Rules of Civil Procedure. For the reasons set forth in Part II of this opinion, the Court finds that neither the language nor purpose of Rule 15 is violated by allowance of plaintiffs' amended complaint.

### IV. CONCLUSION

For all of the foregoing reasons, plaintiffs' motion to amend is granted.

IT IS SO ORDERED.