Donald V. McCANN, Plaintiff,

v.

FRANK B. HALL & CO., INC. and
Albert J. Tahmoush, Defendants.

FRANK B. HALL & CO., INC.,
Counter-Plaintiff,

v.

Donald V. McCANN,
Counter-Defendant.

No. 83 C 3070.

United States District Court,
N.D. Illinois, E.D.

Jan. 30, 1986.

Melvin L. Klafter, Klafter & Burke, Chicago, Ill., for McCann.

John L. Huff and Kevin J. Egan, Winston & Strawn, Chicago, Ill., for Frank B. Hall & Co., Inc. and Albert J. Tahmoush.

## MEMORANDUM OPINION
## AND ORDER

NORDBERG, District Judge.

In November of 1982 plaintiff Donald V. McCann was terminated from his position as Regional Manager for defendant Frank B. Hall & Co., Inc. ("Frank B. Hall"). On March 29, 1983, McCann instituted this lawsuit in the Circuit Court of Cook County, alleging breach of contract and requesting a declaratory judgment voiding the covenant not to compete contained in his employment contract. The case was removed to federal court, and McCann subsequently filed a first amended complaint on June 9,

1983. The parties have been engaged in discovery and this court has set a cut-off date of February 15, 1986. On January 3, 1986, McCann moved to file a second amended complaint. The defendants strenuously object to this motion, arguing that it will unduly delay the lawsuit, complicate discovery, and create new issues unrelated to the issues raised in the first amended complaint. The court has considered the arguments raised by the parties, and hereby denies the plaintiff's motion to file a second amended complaint.

## The Complaints

The first amended complaint is in three counts. Count I seeks a declaratory judgment regarding the rights and relationship of the parties under the contract. Count II seeks a declaratory judgment regarding the restrictive covenant in the employment contract. The complaint alleges that the essence of the relief sought is a declaration of the rights and obligations of the parties, but it also seeks money damages in the event that the clause is voided. Count III is against Albert Tahmoush, a former director of Frank B. Hall, who McCann alleges wrongfully induced the corporation to terminate his employment. Under this claim, McCann seeks damages for injury to reputation and actual damages.

The proposed second amended complaint is in five counts. Count I has not changed; it still requests a declaratory judgment with respect to the rights of the parties under the contract. The remainder of the complaint, however, has changed significantly. Count II reiterates the request for a declaratory judgment with respect to the restrictive covenant. Additionally, it now seeks punitive damages, alleging that the Frank B. Hall's insistence on this covenant even after McCann's termination amounts to tortious interference with his prospective employment. Count III has also undergone substantial revisions. It still alleges that Tahmoush wrongfully induced the corporation's termination of the employment contract, but the amended complaint has added far-reaching allegations with respect to Tahmoush's conduct as Director of the company. A review of these paragraphs indicates that they would be more appropriate in a shareholder's derivative suit alleging fiduciary misconduct than a tortious interference with contract claim (*See* ¶¶ 14–16). In this count, McCann also attempts to allege some constitutional violations (due process and first amendment), and adds new claims with respect to the mental anguish of his wife resulting from the defendants' acts (¶¶ 30–31). The allegations regarding Tahmoush's conduct as director and Mrs. McCann's emotional problems were never mentioned in the earlier complaints.

Counts IV and V are brand new to this cause of action. Count IV alleges what appears to be two tort violations: tortious interference with contract relations, and retaliatory discharge in violation of public policy. The alleged public policy is the due process and first amendment violations alleged earlier in the third count. Count V alleges the tort of willful and wanton misconduct. All of these new tort violations request punitive damages of two million dollars.

## Motion to Amend

Amendments to pleadings are governed by Rule 15(a) of the Fed.R.Civ.P., which provides:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend at any time within 20 days after it is served. *Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.*
> . . .

(emphasis supplied). The determination of the appropriateness of additional amended pleadings is within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Jafree v. Barboy,* 689 F.2d 640, 644 (7th Cir.1982);

*Mertens v. Hummell,* 587 F.2d 862, 865 (7th Cir.1948). In making this determination, a trial court must respect the underlying spirit of Rule 15(a), which is tolerant toward amendments; however, the right to amend is not absolute. *Jafree,* 689 F.2d at 644.

The central issue in motions for leave to amend pleadings is whether there is *undue* prejudice to the non-moving party. *United States v. Hougham,* 364 U.S. 310, 316, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1960); *Gregg Communications v. American Telephone & Telegraph Co.,* 98 F.R.D. 715, 721 (N.D. Ill.1983); *Alberto-Culver Co. v. Gillette Co.,* 408 F.Supp. 1160, 1161 (N.D.Ill.1976). As the court noted in *Alberto-Culver,* nearly every amendment results in some prejudice to the non-moving party. New discovery and some delay inevitably follow when a party significantly supplements its pleadings. The test in each case, then, must be whether *undue* prejudice would result. The district court, in exercising its discretion, must balance the general policy behind Rule 15—that controversies should be decided on the merits—against the prejudice that would result from permitting a particular amendment. Only where the prejudice outweighs the moving party's right to have the case decided on the merits should the amendments be prohibited. *Alberto-Culver, supra,* at 1162. *See also Issen v. GSC Enterprises, Inc.,* 522 F.Supp. 390, 394 (N.D.Ill.1981); *Conroy Datsun Ltd. v. Nissan Motor Corp. in U.S.A.,* 506 F.Supp. 1051, 1054 (N.D.Ill. 1980).

### Analysis

In balancing these interests, the court will consider the position of both parties and the effect the request might have on them. Thus, the court will inquire into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted. 6 Wright, Miller & Cooper: Federal Practice & Procedure, § 1487 at p. 429.

The defendants assert that they will be unduly prejudiced if the court allows this amendment. On January 3, 1986, when McCann presented his motion to file a second amended complaint, the court asked him to address three issues in his reply brief:

1) What is plaintiff's excuse for filing these claims almost three years after the first amended complaint?

2) If leave is granted, will substantial additional discovery be required?

3) Will the defendants thereby incur any substantial additional expenses?

The plaintiff responded to each of these inquiries, and the court will address each response in turn.

### 1. Plaintiff's Delay in Filing

McCann's motion to amend his complaint was filed *over thirty months* after he filed his first amended complaint. He explains that the allegations for retaliatory discharge and willful and wanton misconduct (Counts IV and V) were not included in the earlier complaint because they were motivated by an unreported decision of the Circuit Court of Cook County in *Green v. Advance Ross Electronics,* 79 CH 591. According to the plaintiff, this decision was rendered during June of 1985, and is now on appeal to the Illinois Appellate Court. Plaintiff maintains that, "this case made new law with respect to an independent tort of willful and wanton misconduct and also with respect to Retaliatory Discharge...." (Reply Brief at 2). The plaintiff did not supply the court with a copy of this opinion; however, a copy of this opinion is not necessary to evaluate the validity of plaintiff's explanation for delay. The existence of one new unpublished trial court opinion fails to justify a complete alteration of the plaintiff's lawsuit for several reasons. First, the court cannot allow a plaintiff to change his pleading every time a state trial court writes a new opinion on existing law. Second, this complaint, filed seven months after the alleged "revolutionary" opinion in *Green,* is not really alleging "new" torts in Illinois. The tort of

retaliatory discharge has been recognized in Illinois since the decision in *Kelsay v. Motorola*, 74 Ill.2d 172, 23 Ill.Dec. 559, 385 N.E.2d 353 (1978), nearly eight years ago. There have been significant cases in this field since that time. *See Palmateer v. International Harvester*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1985). The existence of a new unpublished decision at the trial court level does not, in this court's view, provide a sufficient excuse for waiting over two years to amend the complaint to include a cause of action that Illinois has recognized (albeit in limited circumstances) for over seven years. Plaintiffs also misrepresent the fact that *Green* makes new law with respect to an independent tort of willful and wanton misconduct. The Illinois courts have also long recognized the independent tort of willful and wanton misconduct in torts stemming from a breach of contract. *See Morrow v. L.A. Goldschmidt Associates, Inc.*, 126 Ill.App.3d 1089, 82 Ill.Dec. 152, 468 N.E.2d 414 (1st Dist.1984), and cases cited therein.

McCann also cites recent caselaw to explain his failure to request punitive damages against the company in his earlier complaint. According to McCann, this amendment was inspired by *Torbett v. Wheeler Dollar Savings and Trust Co.*, 314 S.E.2d 166 (S.Ct.W.Va.1983), "the only case in the United States to the knowledge of plaintiff's counsel, considering and authorizing punitive as well as actual damages to a plaintiff when his restrictive covenant is held invalid as against public policy." The court has reviewed the *Torbett* opinion, and finds that this is an inaccurate characterization of the *Torbett* court's decision. In *Torbett*, the plaintiff sued to have a restrictive covenant declared invalid. The jury held it invalid, and awarded damages. On appeal, the court held that the damages could be for the tort of intentional interference with prospective contractual relations. This is not a new tort, or a new remedy for an old tort. In fact, as the *Torbett* case points out, this tort is recognized in the Restatement (Second) of Torts, § 766B, which provides:

One who intentionally and improperly interferes with another's prospective contractual relation is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) *preventing the other from acquiring or continuing the prospective relation.*

(emphasis supplied). The plaintiff's amended complaint is actually seeking damages against Frank B. Hall for damages resulting from the tort described in § 766B(b). The *Torbett* decision was issued in December of 1983, six months after the first amended complaint was filed, and two years before the present motion to amend. Plaintiff could have alleged this tort in its initial pleading. A review of the *Torbett* decision reveals that it does not provide this plaintiff with a new cause of action that was not available earlier. Accordingly, the court concludes that plaintiff has not provided a sufficient excuse for the thirty month delay in his request to amend.

**2. Additional Discovery and Expense**

The court's rejection of plaintiff's excuse for delay does not dispose of the motion to amend, however. The touchstone in determining whether to allow an amended pleading is *undue prejudice*, and the court has held that delay, even if unexplained, is not a sufficient reason to deny a motion to amend. *See Gregg Communications v. American Telephone & Telegraph Co.*, 98 F.R.D. 715, 721 (N.D.Ill.1983).

In *A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.*, 68 F.R.D. 383 (N.D.Ill.1975), the court denied the plaintiff's motion to file an amended complaint adding new parties and counts five years after the original complaint had been filed. The court listed several examples of circumstances in which undue prejudice is generally found:

Prejudice is generally found in cases characterized by some or all of the following circumstances: The motion comes on the eve of trial after many months or

years of pretrial activity; *e.g., Dale Hilton v. Triangle Publications*, 5 Fed.R. Serv.2d 185 (S.D.N.Y.1961); *Data Digests, Inc. v. Standard & Poor's Corp.*, 57 F.R.D. 42 (S.D.N.Y.1972); the amendment would cause undue delay in the final disposition of the case; *e.g., Bradick v. Israel*, 377 F.2d 262 (2d Cir.1967); *Johnson v. Sales Consultants*, 61 F.R.D. 369 (N.D.Ill.1973); *Suehle v. Markem Machine Co.*, [38 F.R.D. 69 (E.D.Pa. 1965) ] *supra;* the amendment brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint; *e.g., Collings v. Bush Mfg. Co.*, 19 F.R.D. 297 (S.D.N.Y.1956); *Data Digests, Inc. v. Standard & Poor's Corp., supra; Johnson v. Sales Consultants, supra; Suehle v. Markem Machine Co., supra;* witnesses have become unavailable for examination and the memories of others may have dimmed; *e.g., Data Digests, Inc. v. Standard & Poor's Corp., supra; Kemwel Auto Co. v. Ford Motor Co.*, 10 Fed.R. Serv.2d 239 (S.D.N.Y.1966); and, the amendment would require expensive and time-consuming new discovery; *e.g., Data Digests v. Standard & Poor's Corp., supra; McPhail v. Bangor Punta Corp.*, 58 F.R.D. 638 (E.D.Wis.1973); *Suehle v. Markem, supra.*

*A. Cherney, supra* at 386.

■ The court finds that several of the aforementioned circumstances would arise in this case if McCann were allowed to file his amended pleading. Although the motion does not come on the eve of trial, it was filed approximately six weeks prior to the scheduled cut-off date for discovery, February 15, 1986. As stated above, the plaintiff has not provided the court a sufficient explanation for this delay. A court will generally grant leave to amend, even if discovery is substantially completed, if the discovery has adequately covered the subject matter of the amendment. *Raymond International, Inc. v. Bookcliff Construction, Inc.*, 347 F.Supp. 208, 211 (D.Neb. 1972), *affd.*, 489 F.2d 732 (8th Cir.1974) (per curiam). However, where the amendment

significantly changes the complaint, thereby necessitating substantial additional discovery, leave to amend should be denied. *A. Cherney, supra* at 386 (new claims substantially change the complaint and require discovery); *DeBry v. Transamerica Corp.*, 601 F.2d 480 (10th Cir.1979) (new concept and theories could postpone trial); *McPhail v. Banjor Punta Corp.*, 58 F.R.D. 638 (E.D.Wis.1973) (protracted additional discovery would be necessary).

McCann states that little or no additional discovery will be required because the same facts are alleged in the amended pleadings, and the new complaint only adds new legal theories. According to McCann, the only persons referred to in the new complaint are the plaintiff, Tahmoush (who is already a defendant), John McCaffrey (an officer of Frank B. Hall), Mebus Bartling, and Brian Hondu. Bartling's deposition has already been scheduled, and the only additional deposition would be Hondu's. McCann states that all the written discovery has been completed and has covered the allegations in the proposed pleading. Defendants disagree, arguing that extensive additional discovery will have to be conducted if this pleading is allowed.

■ A cursory review of the amended pleading indicates that it raises several issues which were not addressed in the earlier complaint, and would have to be addressed through new discovery. For instance, one aspect of this complaint that would certainly require additional discovery is the claim of tortious interference with prospective contractual relations. This claim was not raised earlier, and would require discovery with respect to the employment plaintiff was denied because of the restrictive convenant in his employment contract. Additionally, the claims regarding Mrs. McCann's alleged mental anguish resulting from her husband's termination (¶¶ 30–31) would have to be pursued in renewed discovery, as would all of Count III's allegations regarding Tahmoush's conduct as a Director which have not been pursued in the discovery already conducted

by the parties. The punitive damage claims add a new dimension to discovery as well.

The plaintiff's attempt to shrug off the amount of additional discovery necessitated by the amended complaint is unconvincing. McCann mistakenly assumes that just because the tort theories involve similar claims that have already been raised as contract claims, no additional discovery will be necessary. This assumption belies the fact that parties conduct discovery—depositions, interrogatories, document requests, etc.—in order to obtain information regarding the claims in a complaint. The parties pursue discovery consistent with their respective theories of the case, *as they are framed in the pleadings.* If the pleadings change, the theory of the case also changes, and the parties' approach to discovery can shift dramatically. When a complaint's theories of liability and recovery are altered after discovery is substantially completed, the defendant has the right to obtain information regarding the new claims through additional discovery. Depositions which have already been taken may have to be repeated to pursue these additional claims. The same is true with respect to document requests and interrogatories. In this court's view, the amended complaint converts this suit, which was basically a contract action, into a tort action with high stakes—punitive damages of two million dollars in addition to the $300,000 damages requested in the initial contract action. The court finds that it is too late in the litigation to change the entire orientation of the case, especially because the delay has not been adequately explained, and the resulting increase in discovery and expense to the defendants would be inequitable.

## Conclusion

Consistent with the foregoing, the court concludes that the prejudice to the defendants outweighs the moving party's right to pursue these additional theories. *Alberto-Culver v. Gillette Co.,* 408 F.Supp. 1160, 1162 (N.D.Ill.1976); *Issen v. GSC Enterprises, Inc.,* 522 F.Supp. 390, 394 (N.D.Ill.

1981). Allowance of this amended complaint would result in significant extra costs for the defendants with respect to discovery costs and the expense associated with duplication of discovery and delay of trial in the case. Therefore, the motion to amend is denied.