(No. 50437.

VICTOR L. ANDERSON *et al.*, Appellees, v. HYSTER
COMPANY, Appellant.

*Opinion filed January 26, 1979.*

WARD and KLUCZYNSKI, JJ., took no part.

Kirkland & Ellis, of Chicago (Francis D. Morrissey, Francis B. Libbe and Edward J. Zulkey, of counsel), for appellant.

George M. Elsener, of Elsener & Kenneally, Chartered, and Philip H. Corboy, of Philip H. Corboy & Associates, all of Chicago, for appellee Victor L. Anderson.

David G. Mountcastle, of Mountcastle & Da Rosa, of Wheaton, for appellee Steven G. Smith.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Hyster Company, appealed from judgments entered in the circuit court of Cook County upon jury verdicts returned in favor of plaintiffs, Victor L. Anderson and Steven G. Smith, in their actions for damages for personal injuries. The cases were consolidated for trial. The appellate court affirmed (56 Ill. App. 3d 41), and we allowed defendant's petition for leave to appeal. The facts are set forth in the appellate court opinion and will be stated here only to the extent necessary to discuss the issues. Plaintiffs were injured as the result of being struck by a forklift truck manufactured by defendant, which plaintiffs alleged was not reasonably safe because of its defective design. Defendant contends that as a matter of law plaintiffs failed to prove that the forklift truck was

not reasonably safe and that the circuit court erred in permitting the cases to go to the jury; that the conduct of the operator of the lift truck was the sole proximate cause of plaintiffs' injuries; and that the circuit court erred in admitting irrelevant safety standards introduced by plaintiffs and in excluding evidence offered by defendant.

The forklift truck involved was equipped with what defendant called its "Monotrol" system. On the floor of the truck, to the driver's right, was a red pedal which operated the vehicle's speed and direction controls. If the left side of the pedal was depressed, the vehicle moved forward; if the right side was depressed, the vehicle moved in reverse. The farther the pedal was depressed the faster the vehicle moved; its maximum speed was 14 miles per hour. There were two slightly raised discs on the pedal, the disc on the left side being marked with an arrow pointing to the front of the vehicle and the disc on the right side marked with an arrow pointing to the rear. The left disc was slightly lower in height than the right disc.

To the left of the Monotrol pedal was the pedal which operated the brake and clutch. Depressing the brake pedal disengaged the clutch and the vehicle was in neutral; further depression of the pedal applied the brake. The lift truck could also be stopped by stepping on the side of the Monotrol pedal opposite to the direction in which the truck was moving, in what is known as "plugging" the engine. In addition, the vehicle was equipped with a hand brake.

Because there was no neutral position provided, the vehicle would creep forward unless the brake pedal was depressed. Upon being restarted the lift truck would creep forward, even though prior to being turned off it had been moving in reverse. As a safety measure, because of the tendency to creep, the ignition of the lift truck would start only if the hand or foot brake was engaged.

Plaintiffs were employed at a Weyerhauser Lumber

Company warehouse at Franklin Park. The Monotrol forklift, being then operated by Russell Parkins, was carrying a solid-core door which plaintiff Smith was to examine. Parkins stopped the forklift directly in front of plaintiffs, left the vehicle and spoke with plaintiffs. The forklift truck was in the way of another vehicle and Parkins got back on the truck in order to move it. He testified that he started the motor, released the hand brake and stepped on the reverse or left side of the pedal and the vehicle started forward. He panicked, and thinking that he had stepped on the wrong side of the pedal, switched over to the right side. The vehicle picked up speed and struck the plaintiffs, knocking them against a lumber pile, as the result of which they were injured.

A manufacturer is held to the degree of knowledge and skill of experts (*Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 101) and is under a nondelegable duty to make a product which is reasonably safe (*Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 85). That a product was not reasonably safe by reason of defective design may be proved, *inter alia,* by evidence of the availability and feasibility of alternate designs at the time of its manufacture, or that the design used did not conform with the design standards of the industry, design guidelines provided by an authoritative voluntary association, or design criteria set by legislation or governmental regulation. The appellate court has set forth in considerable detail the testimony of the experts called by the parties (see 56 Ill. App. 3d 41, 44-48), and we need not review it here. It suffices to say that the testimony supports the findings that in combining the directional and speed controls in one pedal, in failing to provide a neutral gear, and in failing to provide a direction-indicator system, defendant did not conform with either the design standards of the industry or the guidelines provided by the Society of Automotive Engineers (SAE). The expert

testimony adduced by plaintiffs and defendant was conflicting, and we hold that on this record the question whether defendant failed to design a product which was reasonably safe was one of fact for the jury. We agree with the appellate court that the circuit court did not err in denying defendant's motions for a directed verdict and for judgment *n.o.v.*

We consider next defendant's contention that the sole proximate cause of the plaintiff's injury was the operator's failure to step on the brake. In this action, based on a theory of strict liability, in which there was sufficient evidence to sustain the finding that the product was so designed that it was not reasonably safe, the conduct attributed to the operator of the forklift truck would be a defense to plaintiffs' actions only if such conduct constituted a misuse of the product. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 425.) Reasonable foreseeability of the misuse is measured by an objective standard (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 425), and such misuse would serve to break the causal connection between the defective product and the plaintiffs' injuries only if such misuse was not reasonably foreseeable (*Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 102). The expert testimony adduced at trial was sufficient to support the finding that what occurred here was reasonably foreseeable.

Defendant contends that the circuit court erred in permitting plaintiffs' expert, Marvin Salzenstein, to testify concerning certain of the SAE standards (SAE Recommended Practices J841c and J841d). Defendant's expert testified, and it contends here, as it did in the appellate court, that the SAE standards to which Salzenstein referred did not apply to forklift trucks. It is defendant's position that the standards applicable to its product were those promulgated by the American Standards Association. The testimony of the experts was in conflict

concerning the applicability of the SAE recommended practices in question, and the court did not err in admitting the testimony. We note further that it is clear from Salzenstein's testimony that his opinion that the forklift truck was not reasonably safe was based on a number of considerations other than the reference to the standards. Defendant contends that the circuit court erred in sustaining plaintiffs' objection to a letter written to A.H. Huebner, defendant's vice-president, by a staff engineer of the Society of Automotive Engineers expressing the opinion, with reference to the SAE Recommended Practices J841c and J841d concerning which Salzenstein testified, "that the responsible SAE committee did not intend to relate the specific title or text to the forklift ***." We interpret defendant's argument to be that this letter determined whether the SAE standards in question were applicable to the forklift truck and that the circuit court erred in permitting any reference to them. *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, the only authority cited by defendant in support of this proposition, is wholly irrelevant to the issue presented. In *Murphy* the standards admitted into evidence were promulgated many years after the steps on which plaintiff had fallen were built. Here, the experts were in direct conflict as to whether the SAE standards were applicable and what they meant. This issue was for the finder of fact to determine, and its resolution did not depend upon the opinion of an engineer employed by the SAE.

Defendant's final contention, simply stated, is that because the circuit court admitted Salzenstein's testimony concerning the "irrelevant SAE standards," fundamental fairness required that the letter to Huebner be admitted to show that the standards were not intended to apply to defendant's product. Furthermore, it argues the circuit court should have admitted into evidence its exhibits 9 and 10. These exhibits are standards promulgated by the

American National Standards Institute for powered industrial trucks and contain approximately 100 printed pages. When the exhibits were offered defendant did not indicate which, if any, standard was applicable to the lift truck. It appears from the colloquy between the court and counsel that the exhibits were offered for the purpose of showing that the standards contained nothing which precluded the use of the type of mechanism used in defendant's lift truck. Admitting the standards into evidence for the purpose for which they were offered would permit the jury to draw the inference that because the use of defendant's design was not specifically proscribed, it met the standards of the industry. Without attempting here to delineate the nature and scope of the foundation proof requisite to render admissible for that purpose standards promulgated by a voluntary association, we hold that the circuit court did not err in excluding defendant's exhibits 9 and 10.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

WARD and KLUCZYNSKI, JJ., took no part in the consideration or decision of this case.