RONALD D. MORROW *et al.*, Plaintiffs-Appellants, *v.* L. A. GOLD-SCHMIDT ASSOCIATES, INC., *et al.*, Defendants-Appellees.

First District (4th Division)   No. 83—2119

Opinion filed August 16, 1984.

Siegan, Barbakoff, Gomberg, Gordon & Elden, Ltd., of Chicago (Steven P. Gomberg and James A. Reiman, of counsel), for appellants.

Ash, Anos, Freedman & Logan, of Chicago (Bruce T. Logan, George J. Anos, and James L. Glass, Jr., of counsel), for appellee First Charter Service Corporation.

Gordon & Glickson, P.C., of Chicago, for appellees L. A. Goldschmidt Associates, Inc., and American National Bank.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiffs, purchasers of townhomes, brought an 11-count complaint against defendants, designer/builder/vendors, alleging breach of express warranty and breach of implied warranty of habitability, and requesting punitive damages. Counts VIII through XI, requesting punitive damages for wilful and wanton misconduct by defendants, were dismissed with prejudice. The remaining counts were sustained.

Plaintiffs now appeal the dismissal of counts VIII through XI.

We reverse the decision of the trial court and remand with directions to reinstate counts VIII through XI.

FACTS

Plaintiffs alleged the following facts in their third amended complaint. Defendant, L. A. Goldschmidt Associates, Inc., is an Illinois

corporation engaged in the construction business. Defendant Leo A. Goldschmidt is a contractor and developer, and defendant First Charter Service Corporation (First Charter) is a bank service corporation. In 1976, these defendants jointly purchased a parcel of land in Palos Park, Illinois, and placed title to the property in defendant American National Bank, as land trustee.

Defendants Goldschmidt Associates, Leo A. Goldschmidt and First Charter formed a business entity known as The Commons of Palos Park (Commons). The Commons planned, designed and constructed a residential housing project in Palos Park known as "The Commons, Phase I," consisting of single-family townhomes and condominiums. The homes ranged in price from over $70,000 to over $90,000.

Plaintiffs contracted with the Commons, agent for the trustee, to purchase four of the townhomes in the development. These purchase contracts were entered into prior to the completion of the construction of the homes. Closings on plaintiffs' transactions respectively occurred on December 29, 1978 (Morrow), December 15, 1978 (Strenk), February 27, 1979 (Majchrzak and Kukulka), and July 21, 1978 (Levings).

At the time of each closing, the Commons executed an express warranty with the purchaser which provided that for a period of one year from the date of the execution of the warranty, the Commons would, among other things:

A. Correct all structural defects due to faulty construction and/or defective materials;

B. Warrant the basement to be waterproof and free from infiltration of water from penetration through the walls or floors;

C. Warrant the roof and roof flashings to be free from leaks; and

D. Warrant all plumbing to be in proper working order and free from all defects of workmanship and/or materials.

Both the sales contracts and the express warranties were made part of the pleadings.

Plaintiffs allege that at the time the townhomes were conveyed to them by defendants, numerous and substantial structural defects and contract variances were present. Several such defects are common to each home purchased: these include floors improperly supported due to lack of or improper installation of the floor support system, nonfunctioning of the reverse osmosis water system, and defective carpentry. In addition to these common defects, plaintiffs allege other defects particular to each home: these include extraordinary flooding and water leakage in the basement; roofs incapable of supporting de-

sign loads; gas and water leaks resulting from improperly fitted fixtures; sump pumps connected in violation of the Palos Park Municipal Sanitary Code; and malfunctioning of the heating/ventilation system.

Plaintiffs further allege that defendants had actual knowledge of these defects. In factual support of this allegation, plaintiffs refer to letters, made part of the pleadings, informing defendants of various building and code violations. In a letter dated September 11, 1978, authored by the building inspector of the village of Palos Park and hand delivered by the police to the construction manager of the Commons, defendants were informed that the "workmanship [of the Commons] was extremely bad" and that there were code violations, some of which included:

"1. Floors not level

2. Supports foundation to plate, wedging not acceptable.

3. Lack of support under some floor areas.

4. Part of fire wall missing

5. Steel support beams resting on wooden blocks and wedges or a piece of brick. Should have steel plate and mortar.

and many other items I discussed with you ***."

In another letter dated June 5, 1978, the chief engineer of the Metropolitan Sanitary District of Greater Chicago informed the mayor of Palos Park, with a copy to defendants, that the sewer system serving one of plaintiffs' homes was improperly installed such as to be substantially below minimum grade. Still another letter dated September 1978, authored by a building inspector for the village of Palos Park and addressed to Palos Commons with copies to defendants, admonishes the Commons that it has been repeatedly notified to correct certain deficiencies and that occupancy is not to be allowed until permits have been issued subsequent to such correction. The admonition informs defendants that "[f]ailure to comply will result in a complete order to stop all construction and the posting of non occupancy notices on all buildings."

Plaintiffs further allege that they provided oral and/or written notice of the defects to defendants and made demands to repair all defects in accordance with the provisions of the warranties and that defendants, despite repeated demands by plaintiffs and actual knowledge of the defects, have failed to correct and cure them.

In counts VIII through XI, plaintiffs request punitive damages for "wilful and wanton" misconduct as evidenced by defendants' failure to supervise the construction of the homes and to determine the competency of their agents; defendants' failure to inspect, attempt to detect and correct construction defects, reinspect, and search for similar

defects in light of defendants' actual knowledge. Within each of these counts, plaintiffs enumerate in substantial detail the specific defects particular to each home.

Pursuant to the Code of Civil Procedure, section 2—619 (Ill. Rev. Stat. 1983, ch. 110, par. 2—619), defendants moved to strike and dismiss plaintiffs' third amended complaint. In an order dated April 11, 1983, the trial court dismissed with prejudice counts VIII through XI, those counts seeking punitive damages for wilful and wanton misconduct. The order was certified for appeal.

Plaintiffs now appeal the dismissal of those counts.

OPINION

In determining the propriety of a dismissal based on a motion to dismiss, the appellate court is concerned only with questions of law presented by the pleadings. (*Circle Security Agency, Inc. v. Ross* (1981), 99 Ill. App. 3d 1111, 425 N.E.2d 1283.) The question presented by the instant appeal is whether plaintiffs state a claim for an award of punitive damages, generally a form of tort recovery, where the action brought sounds in contract, and the actual damages alleged reflect economic loss.

Defendants point out, and correctly so, that the general rule in Illinois precludes the recovery of punitive damages in an action for breach of contract. (*Ash v. Barrett* (1971), 1 Ill. App. 3d 414, 274 N.E.2d 149) Defendants quote *Alsip Homebuilders, Inc. v. Shusta* (1972), 6 Ill. App. 3d 65, 69, 284 N.E.2d 509, 512, to explain the reasoning behind this rule:

"The theory behind this rule rests upon a distinction drawn between compensation and punishment. If the general purpose underlying the law of damages is to promote security and prevent disorder, as Corbin points out, and breaches of contract do not cause as much resentment or other physical or mental discomfort as do wrongs called torts or crimes, then the remedies needed to prevent breaches of contract and satisfy the injured party are not as severe as those needed to punish the tort feasor or criminal."

Out of this very reasoning emerges the exception to the general rule. The general rule denying punitive damages for breach of contract does not apply in those exceptional cases where the breach amounts to an independent tort and there are proper allegations of malice, wantonness or oppression. (*Wallace v. Prudential Insurance Co. of America* (1973), 12 Ill. App. 3d 623, 299 N.E.2d 344.) In such cases, the allowance of punitive damages is actually for the tort, or,

more precisely, for the defendants' culpable state of mind (D. Dobbs, Remedies sec. 3.9, at 207 (1973)) and the motive and conduct with which the tort was committed. (*St. Ann's Home for the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 420 N.E.2d 478.) To support the existence of an independent tort, plaintiffs must allege facts which would bring their claim for punitive damages under any recognized tort theory. *Illinois Sterling, Inc. v. KDI Corp.* (1975), 33 Ill. App. 3d 666, 338 N.E.2d 51.

In the instant case, the tort theory asserted by plaintiffs to justify the award of punitive damages is wilful and wanton misconduct. The trial court found that wilful and wanton misconduct is not an independent tort. Our research persuades us otherwise.

Wilful and wanton misconduct is essentially the separate tort of aggravated negligence. Dean Prosser explains:

> "A different approach, at least in theory, looks to the actor's real or supposed state of mind. Lying between intent to do harm, which *** includes proceeding with knowledge that the harm is substantially certain to occur, and the mere unreasonable risk of harm to another involved in ordinary negligence, there is a penumbra of what has been called 'quasi intent.' To this area the words 'wilful,' 'wanton,' or 'reckless,' are customarily applied *** They have been grouped together as an aggravated form of negligence, differing in quality rather than in degree from ordinary lack of care. *** They apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended. Thus, it is held to justify an award of punitive damages, and may justify a broader duty, and more extended liability for consequences ***." (Prosser, Torts sec. 34, at 184 (4th ed. 1971).)

Consistent with Prosser's explanation is our supreme court's discussion of the necessary elements of a wilful and wanton act:

> " '*** Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of con-

structive or legal wilfulness.' " *Chmiel v. Pierce* (1973), 9 Ill. App. 3d 130, 132-33, 291 N.E.2d 862, 864, quoting *Bartolucci v. Falleti* (1943), 382 Ill. 168, 46 N.E.2d 980.

The standard for wilful and wanton negligence or misconduct was more recently reiterated in *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 412 N.E.2d 447, and in *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 415 N.E.2d 1015. Defendants attempt to distinguish *Lynch* because it concerned judgment on a general verdict rather than sufficiency of a complaint, and *O'Brien* because it involved the statutorily mandated standard of conduct for personal injury suits against school districts, not contract actions.

These features, rather than rendering the definitions of wilful and wanton misconduct set forth in these cases inapplicable, merely illustrate a point raised by the *Lynch* court itself; namely, that the rule of law (regarding what constitutes wilful and wanton misconduct) does not vary although the facts to which the law is applicable always present divergent circumstances and facts which, in most instances, are wholly dissimilar. (*Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 412 N.E.2d 447.) Moreover, wilful and wanton misconduct may be found to exist as an independent tort where there is no personal injury involved. Thus, in *Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527, 449 N.E.2d 151, the court found that plaintiff, who alleged that the condominium board's exercise of the right of first refusal regarding the purchase of a condominium unit was in wilful and wanton disregard of the bylaws of the condominium association, adequately alleged that the board members were guilty of wilful and wanton misconduct. Finding that plaintiff had sufficiently described the actions of the board members and sufficiently informed them of her claim that the actions were intentional or taken with reckless disregard of her rights, the court reversed the trial court's dismissal of that count. There was no personal injury involved.

Based on the foregoing analysis and the applicable case law, we acknowledge the independent tort of wilful and wanton misconduct, different in kind from both ordinary and gross negligence (*O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 415 N.E.2d 1015) in the state of mind required, and justifying the award of punitive damages where attendant circumstances of aggravation, as evidenced by a conscious and deliberate disregard for the rights or safety of others, are present. Prosser, Torts sec. 2, at 10 (4th ed. 1971).

■ Having found valid the tort of wilful and wanton misconduct or aggravated negligence, we must now determine whether in this

case plaintiffs have alleged facts sufficient to convert a complaint for breach of contract into a complaint alleging this tort.

A motion to dismiss accepts all well-pleaded facts as true, as well as all reasonable inferences favorable to the nonmoving party which can be drawn from those facts. (*Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 379 N.E.2d 1206.) While ultimate facts necessary to support an action must be alleged, the pleader need not set forth evidence which very well may be derived from discovery subsequent to the filing of the complaint. *Ingram v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 456, 438 N.E.2d 1194.

A complaint for wilful and wanton misconduct is sufficient if·its allegations establish reckless disregard for plaintiffs' safety. (*O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 415 N.E.2d 1015.) While the measure of punitive damages for wilful and wanton misconduct is a question for the fact finder, the preliminary question of whether the facts alleged support the claim is properly one of law. *Pendowski v. Patent Scaffolding Co.* (1980), 89 Ill. App. 3d 484, 411 N.E.2d 910.

Plaintiffs have alleged, in substantial detail, defendants' responsibility for and total failure to cure certain defects in plaintiffs' home which threaten their health and safety. We cannot conclude, as a matter of law, that there is no evidence under these facts that could prove wilful and wanton misconduct, or that the allegations of the complaint, either singularly or in combination, are insufficient to establish defendants' reckless disregard for plaintiffs' safety. (*O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 415 N.E.2d 1015.) Because of the necessity to closely scrutinize the facts of each case alleging wilful and wanton misconduct, plaintiffs should be allowed to present evidence in support of their allegations.

In addition, defendants' motion to dismiss was brought pursuant to Code of Civil Procedure section 2—619, apparently under subsection (a)(9), which allows for dismissal of an action based on the assertion of affirmative matter that avoids the legal effect of or defeats the claim. (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(9).) The alleged affirmative matter asserted to defeat the claim or demand must be something more than evidence offered to refute a well-pleaded fact in the complaint, and must negate the cause of action completely or refute crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. *Russo v. Boland* (1982), 103 Ill. App. 3d 905, 431 N.E.2d 1294.

Defendants, in their motion to dismiss, attempt to refute plain-

tiffs' conclusions of law by asserting that, absent allegations of physical injury, a breach of contract action cannot support an award of punitive damages. Defendants largely base this assertion on *Album Graphics, Inc. v. Beatrice Foods, Inc.* (1980), 87 Ill. App. 3d 338, 408 N.E.2d 1041, and *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443. We will distinguish each of these cases in turn.

In *Album Graphics*, plaintiff corporation, in the business of manufacturing and designing cosmetic containers, brought an action alleging breach of express and implied warranty, negligence, and fraud against defendant glue manufacturer when the cosmetic packages plaintiff sold to its customer fell apart. The appellate court reversed the trial court's dismissal of the warranty counts but let stand the dismissal of the negligence count.

In explaining its affirmance of the dismissal of the negligence count, the reviewing court phrased the issue before it as whether a plaintiff can recover purely economic losses for the failure of a defendant to carefully perform duties imposed upon it by contract: "In other words, the issue is whether we should recognize a cause of action in negligence to recover purely contractual remedies for breach of contract." (*Album Graphics, Inc. v. Beatrice Foods, Inc.* (1980), 87 Ill. App. 3d 338, 349, 408 N.E.2d 1041, 1049.) The court went on to conclude that the law does not consider breach of contract tortious or wrongful and that fault is irrelevant to a breach of contract action.

The issue in the instant case is clearly not that addressed in *Album Graphics*. A faulty cosmetic container can hardly be compared to potentially life threatening defects resulting in substandard homes. Moreover, the tort alleged here is not negligence, it is wilful and wanton misconduct. A cause of action based upon conduct which is wilful and wanton differs fundamentally in both its nature and its legal consequences from a cause of action based on negligence. (*Nosko v. O'Donnell* (1931), 260 Ill. App. 544.) An action based on negligence and carelessness and one based upon wilfulness and wantonness are independent and diverse causes of action that proceed from different principles. (*Robbins v. Illinois Power & Light Corp.* (1929), 255 Ill. App. 106.) Negligence and wilfulness are as unmixable as oil and water: "Wilful negligence" is as self-contradictory as "guilty innocence." (Prosser, Torts sec. 34, at 184 n.79 (4th ed. 1971).) In situations of wilful and wanton misconduct, defendant's conduct operates as a breach, not only of the contract, but also of a duty imposed by law. D. Dobbs, Remedies sec. 3.9, at 207 (1973).

In the tort of wilful and wanton misconduct, it is exactly defend-

ant's state of mind which is at issue, and it is his conscious and reckless disregard for the rights or safety of others that is being punished, not the breach of contract. (*Anvil Investment Limited Partnership v. Thornhill Condominiums, Limited* (1980), 85 Ill. App. 3d 1108, 407 N.E.2d 645.) The exception to the general rule denying punitive damages for breach of contract only comes into play in the face of a *wilful* tort, for it is this wilfulness which society, via the court, seeks to punish. (*Ash v. Barrett* (1971), 1 Ill. App. 3d 414, 274 N.E.2d 149.) The purpose of punitive damages is to punish a defendant so as to teach him not to repeat his intentional, deliberate, and outrageous conduct, and to deter others from similar conduct. (*Anvil Investment Ltd. Partnership v. Thornhill Condominiums, Ltd.* (1980), 85 Ill. App. 3d 1108, 407 N.E.2d 645.) For these reasons, we find that *Album Graphics* does not control the case at bar.

We find *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, similarly inapposite. In *Moorman*, plaintiff purchased a bolted-shell grain-storage tank from defendant manufacturer. A crack developed in one of the steel plates on the second ring of the tank. Plaintiff attempted to recover in tort, arguing that the defect posed an extreme threat to life, limb, and property. The court ruled that to recover in negligence there must be a showing of harm above and beyond disappointed expectations and that a buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects. The court concluded that plaintiff only suffered a commercial loss of the type the law of warranty was designed to protect and held that there can be no strict liability in tort for economic loss. The court further held that this restriction on tort recovery for economic loss applied with equal force to negligence actions.

As did *Album Graphics, Moorman* addressed negligence for latent defects in products. In *Moorman* a gradual deterioration caused by a latent defect resulted in the eventual crack in a single tank. Here, plaintiffs allege substantial design and construction defects, present in not one but four separate homes, many of which were patent, and of which defendants were aware and failed to cure despite repeated requests, in conscious disregard of plaintiffs' safety. What we are dealing with here is the conscious disregard of a known risk and a displayed indifference to the consequences of that risk. It is this highly unreasonable, antisocial conduct that here gives rise to the tort of wilful and wanton misconduct as opposed to the strict liability of *Moorman. Moorman* does not involve the concept of fault nor the goals of punishment and deterrence; it involves economic loss. For

these reasons, the reasoning and the prohibition of *Moorman* do not apply to the instant case.

Counts VIII through XI contain detailed factual allegations of the potentially life-threatening structural defects present in plaintiffs' homes, defendants' actual knowledge of those defects, plaintiffs' repeated demand for cure of those defects, and defendants' continued failure to cure them, in conscious disregard for human safety. Defendants have failed to negate the legal conclusion that punitive damages may lie in a breach of contract action where the facts alleged give rise to an independent wilful tort. Because wilful and wanton misconduct is an independent wilful tort, we hold that counts VIII through XI of plaintiffs' complaint, based on wilful and wanton misconduct, are sufficient to withstand defendants' motion to dismiss.

Accordingly, we reverse the decision of the trial court and remand with directions to reinstate counts VIII through XI.

Reversed and remanded.

JOHNSON and ROMITI, JJ., concur.