CURTIS LEASE, a Minor by his Mother and Next Friend, Janet Lease, Plaintiff-Appellant, v. INTERNATIONAL HARVESTER COMPANY, Defendant-Appellee.

Fourth District   No. 4—88—0054

Opinion filed September 28, 1988.

898

Cook, Shevlin, Keefe & Ysursa, Ltd., of Belleville (Bruce N. Cook, of counsel), for appellant.

Martin H. Katz, of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island, Jonathan H. Barnard, of Schmeideskamp, Robertson, Neu & Mitchell, of Quincy, and Barry Levenstam and Andrea B. Friedlander, both of Jenner & Block, of Chicago, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On July 23, 1984, the minor plaintiff Curtis Lease by his mother and next friend filed suit in the circuit court of St. Clair County seeking recovery for personal injuries he suffered when his leg was

run over by a power riding lawn mower. Defendant International Harvester Company (IH), the manufacturer of the power mower, and defendant James Thompson, the operator of the mower, were charged with responsibility in tort for the injuries. The cause was removed to the circuit court of Adams County, where it was tried before a jury on a third-amended complaint. The first count alleged strict liability for defective product against IH. The second count charged IH with negligence. The third count charged Thompson with negligence. At the close of plaintiff's case, the court directed a verdict for IH as to a portion of the allegation of count I. Defendant Thompson then settled with plaintiff for the sum of $307,500 and count III was dismissed. After presentation of all the evidence, the jury found the remaining issues in favor of defendant IH. On November 14, 1987, the court entered judgment on that verdict.

Plaintiff has appealed claiming, as error, only the direction of the verdict as to portions of the first count. The theory of that count was the power mower was in a defective, dangerous condition when it left the control of IH because: (a) the blade of the mower would cut when the mower was in reverse; (b) "[t]he lawn mower failed to have adequate shields or safety devices to prevent its blades from coming in contact with persons, including plaintiff"; and (c) the mower was defectively designed because it lacked proper view to the rear. Verdict was directed only as to allegations (a) and (b). Thus, the sufficiency of the proof to make a *prima facie* case as to those allegations is all that is before us. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) We conclude that proof was insufficient. Accordingly, we affirm.

The evidence showed defendant Thompson purchased the mower new in 1968 or 1970. On June 16, 1974, he was using it to cut his lawn with his two grandsons, one of whom was plaintiff, then 2½ years old, riding with him. At some point, plaintiff got off and went into Thompson's house. Thompson continued mowing with the other grandson on his knee. Thompson testified that when he neared a downhill slope in his yard, he stopped, looked over his shoulder, put the mower in reverse, and backed up about three feet and ran over plaintiff's leg. Thompson testified he knew of the existence of a device on the mower to disengage the cutting apparatus, but he did not use it before backing. Plaintiff testified he had returned to the mower and was attempting to climb aboard from the rear when the mower was placed in reverse, and he fell with his leg then being cut by the mower. Amputation of portions of the leg was required.

Before proceeding to the complicated legal problem at the heart

of this case, we briefly dispose of charges and countercharges arising from the testimony of Bertrand Strauss, an expert witness who testified for the plaintiff. Strauss stated the mower was unreasonably dangerous because, at the time of the manufacture of the mower (1) it was "feasible" to have installed a device which would automatically stop the rotation of the mower blade when the mower was being moved in reverse; and (2) the manufacturer failed to install such a device. Strauss did not define the term "feasible." Strauss also stated on cross-examination that he did not consider a product defective unless and until it had caused an "accident." The parties agree the existence of an "accident" is not necessary for a product to be defective, although a resultant injury is necessary for the existence of a tort action for strict liability.

■ The parties do not dispute that for a manufacturer of a product to be strictly liable for a defect in a product, the defect must exist at the time the product leaves the control of the manufacturer. (*Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 111, 454 N.E.2d 197, 200.) IH maintains Strauss' statement that a product is not defective until it has caused an "accident" is an admission, binding on plaintiff, that the mower was not defective when it left the control of IH, because it had not then been involved in an "accident." Our short answer to the contention of IH is that a trier of fact could conclude from Strauss' testimony that he was confused in his cross-examination and actually meant to say that no cause of action would exist without an "accident."

■ Plaintiff maintains IH improperly confused the circuit court as to the effect of Strauss' testimony and led it into erroneously directing a verdict. We need not examine this assertion in detail as this matter does not affect our decision. The question of the propriety of a directed verdict is one of law. If the evidence of record requires the direction of a verdict, we must uphold that decision regardless of the reasoning of the court in directing the verdict. If the evidence of record does not require the direction of a verdict, we must reverse the order directing the verdict.

We also note preliminarily that plaintiff offered no testimony to show that the mower was unreasonably dangerous because of any failure of the mower to have more of a shield or other safety device to prevent the blades from coming into contact with plaintiff's leg. Plaintiff does not seriously argue that the directed verdict on this charge should be overturned.

This appeal turns on the complicated issue of whether plaintiff made a *prima facie* case to recover on the theory that the design of

the mower was unreasonably dangerous because the mower was not equipped with a device to automatically stop the running of the mowing blades when the mower was moving in reverse. To prove the allegedly unreasonable nature of the danger presented by having no such automatic device on the mower, plaintiff relies upon the testimony of Strauss. A highly respected text on torts explains two approaches which have been taken to define the basis for determining whether an unreasonably dangerous design defect exists. They are "a consumer-purchaser or consumer-user contemplation test and a risk-utility test." W. Prosser & W. Keeton, Torts §99(3), at 698 (5th ed. 1984).

■■ Under the consumer-user contemplation test, the question of whether the product is unreasonably dangerous is based upon whether the danger in the product is greater than would be contemplated by the ordinary consumer or user. This was the test adopted by section 402A of the Second Restatement of Torts. (Restatement (Second) of Torts §402A (1965).) The Prosser and Keeton text found three disadvantages to the approach, two of which are applicable here. One is that, as here, a third-party victim may suffer from the knowing operation by a user of a defectively designed device. The other applicable problem with the test is the difficulty in determining what the ordinary consumer or user would contemplate.

■■ The danger-utility test is described in these words:

"Under this approach, a product is defective as designed if, but only if, the magnitude of the danger outweighs the utility of the product. The theory underlying this approach is that virtually all products have both risks and benefits and that there is no way to go about evaluating design hazards intelligently without weighing danger against utility. There have been somewhat different ways of articulating this ultimate standard or test. But in essence, the danger-utility test directs attention of attorneys, trial judges, and juries to the necessity for weighing the danger-in-fact of a particular feature of a product against its utility. Under this test, a product can be said to be defective in the kind of way that makes it 'unreasonably dangerous' if a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. There are three primary reasons for so concluding: (1) the harmful consequences in fact from intended and reasonably foreseeable uses resulting from the way the product was designed and marketed up to the time of plaintiff's injury outweighed the benefits in terms of wants, desires,

and human needs served by the product; (2) although the harmful consequences in fact did not exceed the benefits, alternative products were available to serve the same needs or desires with less risk of harm; (3) although the harmful consequences did not outweigh the benefits, there was a feasible way to design the product with less harmful consequences. Most of the products liability litigation related to design hazards has been concerned with the feasibility of a safer alternative design." W. Prosser & W. Keeton, Torts §99(3), at 699-700 (5th ed. 1984).

The "danger-utility test" is not without its own difficulties, one of the most apparent of which is the difficulty of weighing the utility factor, which has a large subfactor involving dollars and cents, against a danger factor which most people are reluctant to calculate on a monetary basis however necessary it is to do so occasionally.

The Illinois Supreme Court has expressed general deference to section 402A of the Second Restatement of Torts (Restatement (Second) of Torts §402A (1965)). (See *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) In *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, that court held that an independent contractor who installed highway signs in accord with State specifications was not liable either for negligence or in strict liability to persons in an automobile who were injured when colliding with one of the signs, even though the sign was not of a break-away type then available and was installed very close to a highway. The court recognized the difficulties of determining when a product was unreasonably dangerous. It determined that the sign did not involve a danger so obvious that no contractor would install the sign which had been the traditional measure of a contractor's liability. *Ryan v. Feeney & Sheehan Building Co.* (1924), 239 N.Y. 43, 145 N.E. 321.

The *Hunt* court also stated:

"Injuries are not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come in contact with the product. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 467[, 343 N.E.2d 465].) The injuries must derive from a distinct defect in the product, a defect which subjects those exposed to the product to an *unreasonable* risk of harm. The Restatement (Second) of Torts concludes that strict liability applies only when the product is 'dangerous to an extent *beyond* that which would be contemplated by the ordinary [person] ***, with the

ordinary knowledge common to the community as to its characteristics.' (Emphasis added.) Restatement (Second) of Torts §402A, comment *i* (1965)." *Hunt*, 74 Ill. 2d at 211-12, 384 N.E.2d at 372.

The *Hunt* opinion also noted that in *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401, the question of whether a product was defective depended in large part on whether the product " 'fail[ed] to perform in the manner reasonably to be expected in light of [its] nature and intended function.' " *Hunt*, 74 Ill. 2d at 211, 384 N.E.2d at 372, quoting *Dunham*, 42 Ill. 2d at 342-43, 247 N.E.2d at 403.

The foregoing decisions would indicate the Illinois Supreme Court has followed the consumer-user contemplation test and the theory of the Second Restatement of Torts. The decision of this court in *Denton v. Bachtold Brothers, Inc.* (1972), 8 Ill. App. 3d 1038, 291 N.E.2d 229, indicates the court has followed that test and that theory. There, this court affirmed a judgment on a directed verdict for a defendant manufacturer of a lawn mower, sued for defective product by a user of the lawn mower. The user had stopped the locomotion of the machine but failed to release the clutch controlling the operation of the cutting blades before he stepped from the machine to move a barrel. In the process, the plaintiff-user slipped, and his feet came in contact with the rotating blades of the mower causing his feet to be cut. The plaintiff admitted he knew of the danger of the blades but maintained warning messages should have been placed on the machine. This court noted that warning messages would have been useless when the plaintiff already knew of the danger. This court also recited the provisions of section 402A, which limits liability to circumstances where the product contains a defect not contemplated by the ultimate consumer. See also *Murphy v. Cory Pump & Supply Co.* (1964), 47 Ill. App. 2d 382, 197 N.E.2d 849.

■ We conclude that, if the consumer-user contemplation test is the sole test to apply, the circuit court was clearly required to direct a verdict on the charge that the mower design was defective and unreasonably dangerous because of the lack of a device to shut off power to the mowing apparatus when the mower ·was being driven in reverse. Thompson clearly knew, and an ordinary consumer would have known, that the mower had no such device. Both would also have likely known that serious injury would result if a child was in the way of the mower when it was driven in reverse. However, this is a case where neither the consumer nor the user, who was aware of the danger, was the victim but rather a 2½-year-old, third-party

child. Plaintiff maintains that even if liability was not shown under the above test, the unreasonable nature of the existing danger in a mower, which can be driven in reverse while the mowing blades continue to rotate, was shown sufficiently to raise a jury question by the testimony of Strauss that (1) at the time the mower left IH's control, a "feasible" device existed to cause the power to the blades to be shut off automatically when the mower is operated in reverse; and (2) statistics indicated many mower accidents occur while mowers are being driven backwards. Thus, in effect, plaintiff is contending at least some of the elements of the danger-utility test should be considered.

As the prime support for his theory, plaintiff cites *Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 385 N.E.2d 690. There, the supreme court upheld a circuit court award to plaintiffs in a strict liability for defective product case. Plaintiffs were persons working near a fork lift truck who were struck by the truck. They alleged the truck to be unreasonably dangerous. The supreme court stated "[t]hat a product was not reasonably safe by reason of defective design may be proved, *inter alia*, by evidence of the availability and *feasibility* of alternate designs at the time of its manufacture, or that the design" did not conform to appropriate standards. (Emphasis added.) (*Anderson*, 74 Ill. 2d at 368, 385 N.E.2d at 692.) The supreme court then concluded that plaintiff had sustained proof that the design of the vehicle did not conform to the proper standards. Thus, the reference to "the availability and feasibility" of other designs is only *dictum*, but it gives indication of consideration of factors beyond the consumer-user contemplation theory.

In the second term, after deciding *Anderson*, the supreme court decided *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859, where the court upheld a judgment in strict liability for defective product in favor of a farm worker and against the manufacturer of an allegedly defective farm implement. In holding the defect was proved to be unreasonably dangerous, that court stated the unreasonable nature of a dangerous defect may be proved by showing an alternate design which is *"economical, practical and effective."* (Emphasis added.) (*Kerns*, 76 Ill. 2d at 163, 390 N.E.2d at 863.) The unreasonable nature of a dangerous defect was also permitted to be proved in that manner in *Derrick v. Yoder Co.* (1980), 88 Ill. App. 3d 864, 410 N.E.2d 1030. Neither case required a showing that the product failed to live up to the expectations of either the original purchaser or user. Accordingly, we conclude that at least some aspects of the danger-utility test are in operation in Illinois law.

Under the decision in *Kerns*, the proof in regard to the alternate design which would diminish or eliminate the danger of the instability in question must be shown to be "economical, practical, and effective." The *Derrick* court spoke in terms of showing whether an alternate design "would eliminate the machine's usefulness; whether its costs would be prohibitive; and the balancing of these factors against the seriousness of the potential harm." (*Derrick*, 88 Ill. App. 3d at 874, 410 N.E.2d at 1038.) Here, the only evidence of an alternate design is the bald opinion of plaintiff's expert that, at the apparent time the mower left IH's control, there existed a "feasible" alternate design. No evidence was introduced as to the cost, the effect the alternate design would have on the utility of the vehicle or how these factors would balance with the "seriousness of the potential harm."

We recognize the *dictum* in *Anderson* spoke merely of showing "availability and feasibility" of an alternate design. However, the word "feasibility" does not necessarily include all of the elements described in *Kerns*, which unlike *Anderson*, is binding precedent upon us. Moreover, as the *Anderson* court decided the case on another theory, the court had no reason to describe the element of feasibility in any detail. Neither does the word "feasibility" necessarily include all of the elements described in *Derrick*. We hold that absent evidence as to the effect a different design would have on cost and use of the product, a trier of fact is in no position to balance these factors against the danger involved with the product and apply the danger-utility test. Thus, that proof failed here.

Accordingly, we affirm the judgment appealed entered upon a directed verdict in favor of IH.

Affirmed.

LUND and KNECHT, JJ., concur.