GEORGE JOSEPH DROBNEY, Adm'r of the Estate of Bridget Margaret Drobney, Deceased, Plaintiff-Appellant, v. FEDERAL SIGN AND SIGNAL CORPORATION, Defendant-Appellee.

Fourth District   No. 4—88—0687

Opinion filed March 9, 1989.—Modified on denial of rehearing June 6, 1989.

GREEN, J., specially concurring.

Rick Verticchio and Thomas J. Verticchio, both of Verticchio & Verticchio, of Gillespie, for appellant.

Edward Szewczyk, of Donovan, Rose, Nester & Szewczyk, P.C., of Belleville, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

On July 13, 1985, three men in rural Macoupin County activated a red "police light" on their car, causing 16-year-old Bridget Drobney to stop. The men "arrested" Bridget and drove her to a nearby cornfield

where they raped and killed her. (See *People v. Hines* (1988), 165 Ill. App. 3d 289, 518 N.E.2d 1362, *appeal denied* (1988), 121 Ill. 2d 577, 526 N.E.2d 835.) The light used by the men to stop Bridget was allegedly manufactured and distributed by defendant Federal Sign and Signal Corporation.

On June 22, 1988, plaintiff George Joseph Drobney, administrator of the estate of Bridget Drobney, filed a six-count second-amended complaint predicated on the theories of negligence, strict liability, and wilful and wanton misconduct. Plaintiff appeals from the order by the circuit court of Macoupin County granting defendant's motion to dismiss the complaint. The propriety of that order is the only question for review.

The complaint as amended alleged the defendant corporation designs, manufactures and distributes a signal light known as the "fireball red light," which is a 12-volt, red, oscillating and rotating light. On July 13, 1985, Daniel Hines, Robert Turner, and Michael Turner allegedly used defendant's "fireball red light" to impersonate police officers and to stop, rape, and murder Bridget Drobney in rural Macoupin County.

Amended count I alleged negligent distribution of the "fireball red light" by defendant in an unlimited and unrestricted manner was the proximate cause of Bridget's death. It alleged, in addition to the facts already set forth, defendant had a duty to sell, design, manufacture, and distribute the "fireball red light" to persons or firms that would use the light for legal purposes. Count I admitted lack of knowledge and an inability to determine how Hines and the Turners purchased or came into possession of the "fireball red light." Count I further alleged defendant knew or should have known its red oscillating light could be used to facilitate criminal acts of rape and murder. Plaintiff alleged such lights have been used in Macoupin County and in other jurisdictions by individuals who, while impersonating police officers, committed rape and murder. Count I charged the foreseeability defendant's product could be used illegally was evidenced by the alleged statement by an agent of defendant that he "hoped it was not *** [defendant's] light" which was used as an instrument in the rape and murder of Bridget. Finally, count I alleged the failure by defendant to limit its sales to the general public enabled Hines and the Turners to come into possession of a "fireball red light." As a direct and proximate result of such negligent sale and distribution, plaintiff alleged defendant caused the death of Bridget Drobney.

Count II was premised upon strict liability and alleged the fireball red light manufactured by defendant was unreasonably dangerous and

defective in design. The light's defective condition was alleged as its "red oscillating nature and ability to be used for the illegal purpose of impersonating police officers." Count II further alleged the benefits of the "fireball red light" as designed are outweighed by the risk of danger inherent in that design. In addition, plaintiff alleged a safer alternate design could, for minimal consequence and cost to defendant, produce a product that does not oscillate and is not red in color. Finally, count II charged the sale of the defectively designed light by defendant was the proximate cause of Bridget's death.

Counts III and IV reiterated the charges contained in counts I and II respectively and requested compensatory damages for medical and funeral expenses incurred by plaintiff as a result of Bridget's death. Counts V and VI alleged wilful and wanton misconduct on the part of defendant; count V for defendant's negligent distribution, and count VI for its defective design of the "fireball red light."

On August 31, 1988, the trial court, having already dismissed two similar complaints filed by plaintiff in this case, granted defendant's motion to dismiss the second-amended complaint for failure to state a cause of action. Ill. Rev. Stat. 1987, ch. 110, par. 2—615.

■ The test for the sufficiency of a complaint is whether it sets forth a valid claim as its avenue for recovery and whether it pleads facts sufficient to bring the claim within the legally recognized cause of action alleged. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 430 N.E.2d 1005; Ill. Rev. Stat. 1987, ch. 110, pars. 2—603(c), 2—612(b).) All well-pleaded facts must be taken as true, as well as all reasonable inferences which may be drawn therefrom. *Morrow v. L.A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 468 N.E.2d 414.

■ The elements of a simple common law negligence action are: "the existence of a duty on the part of the person charged to protect the complaining party from injury, a failure to perform or breach of that duty, and a consequent injury so connected with the failure to perform that such failure is the proximate cause of the injury." (*Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity* (1987), 155 Ill. App. 3d 231, 234, 507 N.E.2d 1193, 1196.) The existence of a duty is a question of law to be decided by the court, while the factual question of proximate cause is largely one for the trier of fact. (*Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 374 N.E.2d 203; *Powell v. Star Fireworks Manufacturing Co.* (1987), 162 Ill. App. 3d 647, 515 N.E.2d 1280.) Foreseeability is a consideration under either analysis. Plaintiff argues defendant should have foreseen the negligent sale of its product could conceivably cause a criminal act to oc-

cur. To support this allegation, plaintiff cites prior cases where a "police light" was used to facilitate the crimes of rape and murder. See *People v. Price* (1968), 96 Ill. App. 2d 86, 238 N.E.2d 881; *State v. Henry* (La. 1983), 436 So. 2d 510.

■ Foreseeability of harm resulting from the negligence is the most significant element of proximate cause (*Felty*, 71 Ill. 2d 126, 374 N.E.2d 203), while foreseeability as it relates to duty "is a determinative consideration only where a particular occurrence is so extreme that, as a policy decision, it would be unwise to require defendant to guard against it." (*Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 663, 465 N.E.2d 513, 519; *cf. Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231, 233; *Powell*, 162 Ill. App. 3d 647, 515 N.E.2d 1280.) In the cases where the facts invite varying inferences, the court should permit the jury to be the sole determiner of the foreseeability issue "including the foreseeability of the particular cause and effect of plaintiff's injury, as a factual matter in its proximate cause determination." (*Nelson*, 124 Ill. App. 3d at 663, 465 N.E.2d at 519.) Accordingly, we will not intrude on the province of the jury unless "the facts alleged in a complaint on their face demonstrate that the plaintiff would never be entitled to recover." (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 13, 310 N.E.2d 1, 5.) On such facts, the complaint is properly dismissed as insufficient. See *People ex rel. Fahner*, 88 Ill. 2d at 308, 430 N.E.2d at 1009; *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630; *Louis v. Barenfanger* (1966), 81 Ill. App. 2d 104, 226 N.E.2d 85, *aff'd* (1968), 39 Ill. 2d 445, 236 N.E.2d 724.

■ Here, plaintiff has failed to sufficiently allege in his complaint the negligent sale of the "fireball red light" caused the unfortunate act to occur. While we recognize plaintiff did not need to set forth evidence which may well have been derived from discovery subsequent to the filing of the complaint (*Wait v. First Midwest Bank/Danville* (1986), 142 Ill. App. 3d 703, 491 N.E.2d 795), it is critical plaintiff's complaint admits a fact essential to his case cannot be discovered. Specifically, plaintiff "does not know and is unable to determine where Daniel Hines and/or Robert Turner and Michael Turner purchased or came into possession of the fireball red light." Counts I and II charge defendant with negligent distribution of its product, yet plaintiff is unable to allege facts which would enable him to recover. It is possible the light was distributed in this instance to an individual who had the statutory right to possess such a light (see Ill. Rev. Stat. 1987, ch. 95½, par. 12—215), but somehow fell into the hands of criminals, either by theft or by happenstance.

Plaintiff's counts I and II sounding in negligence simply cannot stand when plaintiff cannot, even after discovery, prove the negligent distribution of the light was the proximate cause of Bridget's death and plaintiff's resultant damages. Since the foregoing analysis supports the trial court's dismissal of the complaint as to the cause of action in negligence, we need not determine whether defendant had a duty to sell only to lawful users of its product.

■ The requisite elements of a complaint alleging strict liability are: (1) a defective product was placed in the stream of commerce; (2) the condition of the product rendered it unreasonably dangerous; (3) this condition existed when the product left the control of defendant; and (4) the condition was a proximate cause of injury. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182; Restatement (Second) of Torts §402A (1965).) Plaintiff's complaint in counts II and IV alleged the "fireball red light" manufactured by defendant is defective in design because it is red in color, oscillates, and is capable of being used to impersonate police officers. Plaintiff charged these alleged defects could easily be cured by their elimination. Counts II and IV further alleged the benefits of the light as designed are outweighed by the risk of danger inherent in that design. The latter theory is known as the risk-utility or danger-utility test. The risk-utility test and what is known as the consumer-user test, are two approaches available to determine whether an unreasonably dangerous design defect exists. W. Keeton, Prosser & Keeton on Torts §99(3), at 698 (5th ed. 1984).

This court recently analyzed in depth the consumer-user and risk-utility tests in *Lease v. International Harvester Co.* (1988), 174 Ill. App. 3d 897, 529 N.E.2d 57. As we stated in *Lease*, the consumer-user test has been adopted by section 402A of the Restatement of Torts. (Restatement (Second) of Torts §402A (1965).) "Under the consumer-user contemplation test, the question of whether the product is unreasonably dangerous is based upon whether the danger in the product is greater than would be contemplated by the ordinary consumer or user." *Lease*, 174 Ill. App. 3d at 901, 529 N.E.2d at 60.

Plaintiff relies on *Lease* to support his contention the risk-utility test is in operation in Illinois law. In *Lease* we quoted the description of the risk-utility test as contained in the Prosser and Keeton text. Again, we find it useful to refer to that highly respected source:

> "Under this approach, a product is defective as designed if, but only if, the magnitude of the danger outweighs the utility of the product. *** Under this test, a product can be said to be defective in the kind of way that makes it 'unreasonably dan-

gerous' if a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. There are three primary reasons for so concluding: (1) the harmful consequences in fact from intended and reasonably foreseeable uses resulting from the way the product was designed and marketed up to the time of plaintiff's injury outweighed the benefits in terms of wants, desires, and human needs served by the product; (2) although the harmful consequences in fact did not exceed the benefits, alternative products were available to serve the same needs or desires with less risk of harm; (3) although the harmful consequences did not outweigh the benefits, there was a feasible way to design the product with less harmful consequences. Most of the products liability litigation related to design hazards has been concerned with the feasibility of a safer alternative design." W. Keeton, Prosser & Keeton on Torts §99(3), at 699-700 (5th ed. 1984).

Our opinion in *Lease* concluded the supreme court has used some aspects of the risk-utility test in its analysis of strict liability cases and determined that in those cases, the unreasonable nature of a dangerously defective product may be proved by showing " 'the availability and *feasibility* of alternate designs at the time of its manufacture.' " (Emphasis in original.) (*Lease*, 174 Ill. App. 3d at 904, 529 N.E.2d at 62, quoting *Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 368, 385 N.E.2d 690, 692.) In addition, these alternate designs must be "economical, practical and effective." (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 163, 390 N.E.2d 859, 863.) Plaintiff argues his complaint sufficiently pleads the following facts necessary under the risk-utility test: (1) the likelihood of danger posed by the light as designed is great because it is capable of falling into possession of persons who would use it for illegal purposes; (2) a safer alternate design is feasible by simply manufacturing a product that is not red and does not oscillate; (3) the financial cost of an alternate design would be minimal; and (4) an alternate design would not have adverse effects on the manufacturer or public because, even though it would not look like a police officer's light, it could still be used as a hazard light. We disagree.

■■ ■ In a strict liability action, the questions of proximate cause, foreseeability, and whether a product is defective or unreasonably dangerous are ordinarily for a jury to resolve. (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 507 N.E.2d 1213, *appeal denied* (1987), 116 Ill. 2d 575, 515 N.E.2d 125.) However, as we have already discussed, when it appears no set of facts can be

proved from the complaint which will entitle the plaintiff to recover, the cause of action should be dismissed on the pleadings. (*Winnett*, 57 Ill. 2d 7, 310 N.E.2d 1.) Such is the case with plaintiff's strict liability allegations. Under either the analysis of the consumer-user test as adopted by the Restatement or the risk-utility test suggested by the supreme court in *Anderson* and *Kerns*, we cannot agree the light as it is currently manufactured is defective to the extent it is unreasonably dangerous in design.

Initially, we note that under ordinary circumstances, a manufacturer may reasonably assume no one will violate the criminal law. (Restatement (Second) of Torts §302B, comment *d,* at 89 (1965).) The Illinois Vehicle Code provides that any person using a red oscillating light to stop or detain another person without lawful authority shall be guilty of a Class 4 felony. (Ill. Rev. Stat. 1987, ch. 95½, par. 12—215(f).) Therefore, it is not reasonable to expect defendant to have foreseen Bridget's murder would result from the unlawful use of its product that otherwise performs " 'in the manner reasonably to be expected in light of [its] nature and intended function.' " *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 211, 384 N.E.2d 368, 372, quoting *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 342-43, 247 N.E.2d 401, 403 (applying the Restatement's consumer-user contemplation test).

Next, we are unable to discern from the record whether defendant manufactures and distributes its product only as a hazard light, or whether its consumers also include lawful users of its red oscillating light, *e.g.,* law enforcement authorities, fire departments, ambulance rescue teams or designated county authorities, such as county coroners. (Ill. Rev. Stat. 1987, ch. 95½, par. 12—215(a).) The Illinois Vehicle Code prohibits "[t]he use of red or white oscillating, rotating or flashing lights, whether lighted or unlighted," by any vehicle that is not operated by State, Federal, or local law enforcement authorities, or other designated vehicles. (Ill. Rev. Stat. 1987, ch. 95½, par. 12—215(a)(1).) Law enforcement vehicles are also authorized to use amber or blue oscillating, rotating, or flashing lights if they are used in combination with red lights of the same type. Ill. Rev. Stat. 1987, ch. 95½, pars. 12—215(b), (c).

Plaintiff does not suggest in his complaint an alternate design which would alleviate the alleged problems associated with the present design, he merely submits that a nonred, nonoscillating light would be sufficient. However, if defendant's customers include lawful users, such as the ones listed above, an alternate design that is not red in color and does not oscillate would not be *available* or *feasible*

(*Anderson*, 74 Ill. 2d at 368, 385 N.E.2d at 692), *economical*, or *practical* (*Kerns*, 76 Ill. 2d at 163, 390 N.E.2d at 863) for defendant to manufacture. Even assuming all lawful users purchase their lights from manufacturers other than defendant, we question, given the variety of colors of lights available to law enforcement vehicles, whether it would be *effective* (*Kerns*, 76 Ill. 2d at 163, 390 N.E.2d at 863) for defendant to change the design of its light at all. The variety of colors of lights available to law officers suggests a light of any color might enable the impersonation of a police officer.

Finally, plaintiff's complaint alleged a light of alternate design should be nonoscillating. However, police officers are authorized to use rotating or flashing lights on their vehicles, in addition to oscillating lights. We find it difficult to envision a fact scenario wherein a reasonable motorist, especially at night, would not suspect that any colored light attached to a vehicle, regardless of whether it oscillates, flashes or rotates, is one that is indigenous to an unmarked police car. For these reasons, we conclude plaintiff failed to allege in counts II and IV sufficient facts pointing to a design defect that would entitle him to recover under the theory of strict liability.

We affirm the judgment of the circuit court of Macoupin County dismissing plaintiff's complaint for failure to state a cause of action in either negligence or strict liability.

Affirmed.

LUND, J., concurs.

JUSTICE GREEN, specially concurring upon denial of petition of rehearing:

I concur with the decision of the majority to affirm the dismissal of the complaint and with the reasons stated for dismissal of counts II and IV, which are based upon strict liability. I cannot agree that counts I, III, and V charging negligent or wilful and wanton distribution of the red light are defective because the plaintiff admitted in the pleading he was then unable to determine how the alleged murderers obtained possession of the light.

The complaint was dismissed pursuant to a defense motion under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), which merely tests the sufficiency of the complaint to state a cause of action. The counts allege the defendant manufactured the light and distributed it without restriction. The counts also allege defendant knew or should have known the light was likely to be

used to impersonate police officers in the facilitation of the commission of a crime if no restrictions were placed on distribution. They further allege the unrestricted distribution was a proximate cause of the murderers obtaining the light and their use of the light was a proximate cause of the rape and murder. I do not deem allegation of how the light came into the possession of the murderers to be a necessary element of the statement of a cause of action. Plaintiff did not have to make allegation negating the possibility that the murderers obtained possession of the light by virtue of an intervening factor which would destroy the proximate aspect of the causal relationship between the distribution of the light and its possession by the murderers.

I deem the method by which the murderers obtained the possession of the light to be an evidentiary detail not needed to be alleged and therefore neither the failure to allege it nor the lack of present ability to then prove it was fatal to the statement of a cause of action. Moreover, the element of how possession was obtained would seem to be an example of the type of evidence that might later be obtained with discovery. *Wait v. First Midwest Bank* (1986), 142 Ill. App. 3d 703, 491 N.E.2d 795.

I concur in the dismissal of counts I, III, and V because the ultimate facts set forth do not constitute the breach of a common law duty. The parties correctly point out that the question of whether a duty exists under given circumstances is a question of law for the court (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 493 N.E.2d 1022) and that the existence of duty depends upon "[t]he likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant." (*Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231, 233.) No case has been called to our attention which has placed a common law burden upon the manufacturers and original distributor of products which might be used to imitate law enforcement officers to restrict the distribution so that the items do not come in to the possession of others. While such produces might be held to anticipate that these items will be used to facilitate a serious crime, the difficulties in guarding against it would be most difficult, as the majority opinion indicates. As pointed out by defendant, even in regard to items as dangerous as firearms, producers have been held to have no common law duty to place restriction on their distribution to prevent the firearms from getting in the possession of persons likely to use them to harm others. *Riordan v. International Armament Corp.* (1985), 132 Ill. App. 3d 642, 477 N.E.2d 1293; *Linton v. Smith & Wesson* (1984), 127 Ill. App. 3d 676, 469 N.E.2d 339.